■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LISA FATA, Appellant.—Judgment, Supreme Court, New York County (Richard B. Lowe, III, J.), rendered October 23, 1989,

convicting defendant, after a jury trial, of robbery in the first degree and sentencing her to an indeterminate term of imprisonment of from five to fifteen years, unanimously reversed, on the law, and the matter remanded for a new trial.

The facts are accurately stated in the concurring memorandum of Justice Milonas. We agree with him that there should be a reversal, but only on the ground that the court erred in constructively amending the indictment by permitting the jury to consider the champagne bottle a dangerous instrument. To that extent, we concur in Justice Milonas' concurrence.

In our view, the court's response to the jury's question whether intent must precede force does not constitute error. Immediately before responding to this question with an expanded definition of intent, the court instructed the jury, *inter alia,* that a person steals property "when with intent to deprive another of property she wrongfully takes such property from an owner," that "a person acts with intent to deprive another of property when her conscious aim or objective is to deprive another of the property" and that a "person forcibly steals property in the course of committing a larceny when she uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking * * * or * * * retention" of the property. These supplemental instructions precisely addressed the jury's concern and were thus sufficient to inform the jury that an intent to steal must accompany the use of force.

We disagree with the conclusion that the jury demonstrated "continuing bewilderment" by its request for a written instruction. First of all, the jury did not ask for a written description of the intentional use of force but for a "written description of the elements or * * * [a] re-read[ing of] element four of [robbery in] the First, Second and Third Degree", i.e., that defendant forcibly stole the property. Nor does the jury's request show that it continued to be "bewildered" as to whether intent must precede force. If that were the jury's concern, there is every reason to believe that it would have specifically asked for clarification as to this precise point—the jury having already demonstrated its ability to do so. The fact that the jury asked only for a re-reading of one of the elements shows that it was no longer troubled by the question whether intent must precede force.

In any event, there must be, as indicated, a new trial

because of the improper constructive amendment of the indictment. Concur—Sullivan, J. P., Kupferman, Kassal and Smith, JJ.

Milonas, J., concurs in a separate memorandum as follows: This court is unanimous in finding that the trial court committed reversible error by allowing the constructive amendment of the indictment against the defendant. On the other grounds urged for reversal by the defendant, I would also reverse for the court's failure to provide a sufficient response to the jury's question of whether intent must precede force in robbery first degree.

Defendant was indicted for robbery in the first degree, robbery in the second degree and grand larceny in the fourth degree after she allegedly rendered unconscious the complainant, with whom she had engaged in sex for money, tied him up, threatened him with a knife and stole his wallet and trousers. At trial, she asserted that after the sexual act was completed, the complainant became abusive and attempted to prevent her from leaving his hotel room, at which point she hit and restrained him. According to defendant, she did not decide to take his trousers until she had bound him, and her motive for this was both to retaliate for his behavior and deter him from giving chase; she did not intend to retain his belongings. The jury, evidently accepting the prosecution's version of the incident, convicted defendant of robbery in the first degree. Her arguments on appeal concern the trial court's purported errors in delivering its instructions to the jury and the Judge's constructive amendment of the indictment.

Prior to charging the jury, the court afforded the defense counsel an opportunity to examine its proposed instructions. In that regard, it was explained that robbery is committed when "a person steals property and commits larceny when, with intent to deprive another of property * * * she wrongfully takes such property from an owner thereof. Takes property means to exercise control over it permanently." However, the charge actually given to the jury omitted the foregoing definition of "takes property" but, instead, advised that "[a]ccording to the law, a person steals property and commits larceny when with intent to deprive another of property she wrongfully takes such property from an owner thereof." The defense objected to the fact that the Judge had changed his instructions, as well as his failure to include the element of permanency in the charge. In denying defendant's request that "takes property" be explained to the jury as originally propounded, the court stated that the contemplated charge

was "in error and that's why I left it out." When the jury subsequently asked to hear again the elements of each count, defendant's attorney renewed her application for the court to instruct in the manner indicated in the proposed charge. In response, the court declared that "I will read that definition except it will read takes property means to exercise control over it, does not mean exercise permanently." Defense counsel expressed dissatisfaction that she had relied upon the anticipated charge in summing up to the jury.

In the course of deliberations, the jurors also inquired into the term "forcibly removed" and whether "intent" must precede "force". Although defendant's lawyer and the District Attorney agreed that the court should reread its previous charge defining forcible stealing, they clashed over whether force must precede intent. In the view of the prosecutor, "intent can be formed at any time during the course of the commission of the crime", whereas the defense lawyer was of the opinion that from the nature of the jurors' question, it was apparent that what they really wanted to know was whether "the conscious objective has to precede the force." The court noted that it would instruct the jury as follows:

"I'm going to inform them number one, there is no time limit as to when intent must be formed.

"Number two, I'm going to say, however, it must be the person's conscious aim or objective to take the property. He must intend to steal the property.

"And then finally, I will tell them that one of the elements of robbery, it is up to them to determine whether force was used in the taking or force was used to prevent the resistance to the taking. Force upon another person for the purpose of preventing or overcoming resistance to the taking of the property or to the retention immediately after the taking or the compelling of the owner to deliver up such property."

A discussion ensued between defendant's lawyer and the court in which a series of examples was posed in which no robbery could be deemed to exist since there was no conscious objective to employ force in order to steal property. In any event, the Judge, after simply repeating the prior charge, added that: "I am going to read to you, for you, an expanded definition of intent and I will tell you that there—it must be a person's conscious aim or objective to take property. It is up to you to determine, it's a question of fact that I cannot decide, it's up to you to determine whether force was used and at what point the force was used and whether or not the force

prevented the person from having his property being taken from him. There are questions of fact for you to determine, not for the court."

While the court then proceeded to present an expanded charge on intent, it did not elucidate how intent relates to the use of force. The jury resumed its deliberations but later submitted the following question: "Under first degree element number 5 can the champagne bottle be considered a dangerous weapon or must we only consider a knife?" In that regard, there is evidence that defendant may have hit the complainant in the head with a champagne bottle. The Judge replied to the inquiry by observing that "as long as the incident instrument meets the definition of dangerous instrument, it doesn't have to be." Defense counsel argued that the jury should not be permitted to substitute a bottle or anything else for the knife that the prosecution had claimed was utilized in the commission of the crime. She urged that once the People had chosen the instrument that was allegedly wielded by defendant and introduced it into evidence, they should not be allowed to change the theory of prosecution at this late date. The District Attorney insisted that defendant herself had created the situation as a result of her account of the incident. The court, evidently in agreement with the People's position, informed the jury that: "The answer to that question is yes, the champagne bottle can be considered a dangerous instrument. The proviso is whatever instrument you deem to have been used must conform with the definition of dangerous instrument and the definition of dangerous instrument is any instrument under the circumstances within which it is used is capable of causing serious physical injury or death."

One of the jurors then asked to speak, but the Judge advised the juror to talk through the foreperson. There was a jury conference, after which another note was delivered asking for a written description of the intentional use of force. The court refused to do this and merely reread the original instruction. At sentencing, the defense lawyer unsuccessfully moved to set aside the verdict on the ground that she had relied upon the court's initial definition of taking; she also reiterated her objection to the Judge's response to the jury's inquiry as to whether intent must precede forcible taking and his permitting the jury to consider the champagne bottle to be a dangerous instrument instead of the knife specified in the indictment.

Regardless of whether the court acted appropriately in delivering to the jury an instruction with respect to taking

that was different from the one provided to defense counsel without first informing her of the change, the charge actually administered was not incorrect. Therefore, reversal on this basis alone is not warranted. Certainly, larceny requires that the perpetrator possess an intent to convert the property permanently *(People v Jennings,* 69 NY2d 103). However, contrary to the attempt by the defense to equate "taking property" with "intent to deprive", these two concepts are not identical, as aptly pointed out in the Practice Commentary by William C. Donnino (McKinney's Cons Laws of NY, Book 39, Penal Law art 155, at 100): "In addition to having a specific intent to deprive another of property or to appropriate the same to oneself or a third party, to be guilty of larceny one must wrongfully take, obtain, or withhold the property from its owner. This so-called 'taking element' of larceny differs from the general larcenous intent in that it may be 'satisfied by a showing that the thief exercised dominion and control over the property for a period of time, however temporary, in a manner wholly inconsistent with the owner's continued rights.' *People v. Jennings, supra,* at 118. Thus, while the intent must be to convert the property permanently, the taking of the property pursuant to that intent need only be temporary to consummate a larceny. *People v. Alamo,* 1974, 34 N.Y.2d 453, 358 N.Y.S.2d 375, 315 N.E.2d 446; *People v. Olivo,* 1981, 52 N.Y.2d 309, 438 N.Y.S.2d 242, 420 N.E.2d 40. Dominion and control of the property, even though for a moment, are the paramount elements of a taking."

Of defendant's remaining two contentions, although the panel is not in accord with one of them, we are all in agreement that the court committed reversible error by authorizing the constructive amendment of the indictment against defendant *(see, People v Grega* and *People v Roberts,* 72 NY2d 489; *People v Spann,* 56 NY2d 469). In *People v Grega (supra,* at 495-497), the Court of Appeals declared:

"An indictment serves three important purposes. 'First and foremost, an indictment * * * provid[es] the defendant with fair notice of the accusations against him, so that he will be able to prepare a defense.' *(People v Iannone,* 45 NY2d 589, 594.) Second, the indictment prevents the prosecutor from usurping the powers of the Grand Jury by ensuring that the crime for which defendant is tried is the same crime for which he was indicted, 'rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence'. *(Id.; see also, Russell v United States,* 369 US 749, 770.) Finally, an indictment prevents later retrials for the same

offense in contravention of the constitutional prohibition against double jeopardy *(People v Iannone, supra,* at 595).

"Proof at trial that varies from the indictment potentially compromises two of the functions of the indictment—notice to the accused and the exclusive power of the Grand Jury to determine the charges. Where defendant's right to fair notice of the charges or his right to have those charges preferred by the Grand Jury rather than by the prosecutor at trial has been violated, reversal is required. In *Roberts,* such a violation occurred; in *Grega,* it did not.

"In *Grega,* the proof presented by the People at trial in fact did not vary from the allegations of the indictment. The indictment alleged that defendant had committed the charged sex offenses through the use of physical force, and defendant's use of physical force was precisely what the complainant described in her testimony. Thus, defendant was not deprived of fair notice of what the People would attempt to prove * * *

"By contrast, in *Roberts* the People's presentation of proof at trial, which contradicted the factual allegations of the manslaughter count of the indictment as to the cause of death, violated the constitutional and statutory requirements that an indictment provide fair notice in order to permit the preparation of a defense."

The court in *People v Grega (supra,* at 498), proceeded to explain that the prosecution against defendant Roberts "chose to include the cause of death in the indictment and to repeat that allegation in their answer to discovery. Having specified in the indictment, and later in their answer to discovery, that defendant struck the victim, thereby causing her death, the People were not then free to present proof at trial that virtually ruled out that theory as the cause of death and substituted another one". The court then distinguished *People v Spann* (56 NY2d 469, *supra)* from the *Roberts* matter on the ground that not only did not the defendant, in common with defendant herein, himself introduce the version of the facts that was at variance with that contained in the indictment but the crime remained unchanged from the one asserted against him. Thus, *People v Spann (supra)* concerned a specific situation in which the discrepancy between the proof at trial and the factual allegation set forth in the indictment did not impermissibly amend an element of the crime, and the majority's reliance upon that authority is misplaced.

In *People v Powell* (153 AD2d 54, *lv denied* 75 NY2d 969), the court perceived an analogy with *People v Roberts (supra)*

wherein the indictment accused defendant of hitting the victim over the head with a ceramic lamp but the evidence at trial tended to show that the dangerous instrument used was a baseball bat. The court in that matter commented that although an indictment is not rendered invalid simply because it does not refer to the particular deadly weapon or dangerous instrument wielded by the defendant, such an alteration between the proof at trial and the allegation in the indictment does not result in constructive amendment to "correct a defect or error relating to a matter of form * * * but instead ma[kes] a significant, substantive change in the theory of the prosecution and seriously prejudice[s] the defendant on the merits" *(People v Powell, supra,* at 56-57). The similarity between the matter herein and that in *People v Powell (supra)* is striking.

Defendant, having no notice that a champagne bottle could be considered a dangerous instrument, was not afforded an opportunity to endeavor to persuade the jury that it is not such an implement. Indeed, a champagne bottle, unlike a knife, is not an intrinsically deadly weapon. Moreover, defendant's testimony might have been different, and her attorney's summation would almost certainly have been revised. The prosecution presented evidence of two separate incidents, only one of which, the use or threat of the knife, was in support of the robbery charge. The People's claim that defendant hit complainant with a telephone was not specifically related to the robbery count. Thus, when defendant asserted that she hit the complainant with a bottle rather than a telephone, she did not alter the theory of the case, and, contrary to what occurred in *People v Spann (supra)*, she was not on notice of the new theory being, in effect, submitted to the jury's consideration. Defendant was, consequently, prejudiced by the court's constructive amendment of the indictment.

It is also urged, and, in my opinion, with merit, that the court committed error in failing to supply a more meaningful response to the jury's question of whether intent must precede force. In that connection, while the Court of Appeals in *People v Malloy* (55 NY2d 296, 302), held that although it had "never adopted a per se rule concerning the adequacy of a court's response or prohibited in every case the rereading of the original charge," the Trial Judge is nonetheless obligated to give a substantive answer to the jury's request for clarification. Thus, "[t]he error is not so much that an instruction is inadequate in some legal respect, but that the jury, misled by or not comprehending the original charge, remains perplexed about the elements of the crime or the application of the law

to the facts" *(People v Malloy, supra,* at 302). According to the Court of Appeals therein, "[t]he factors to be evaluated are the form of the jury's question * * * the particular issue of which inquiry is made, the supplemental instruction actually given and the presence or absence of prejudice to the defendant" *(supra,* at 302). Applying the standard enunciated in *People v Malloy (supra)* it is clear that the court's mere rereading of its previous charge was insufficient since the jurors were obviously confused about the relationship between intent and force.

Although the majority deem the supplemental instructions to have been sufficient, a close examination of what actually transpired does not bear out this assessment. The jury specifically asked, "must 'intent' precede force for element number four in Robbery 1, 2, and 3?" It was precisely because of the jury's uncertainty of the meaning of the Judge's explanation of the fourth element that "a person forcibly steals property when in the course of committing a larceny, a larceny is stealing, she uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking or compelling the owner of such property to deliver up the property" that the question was posed in the first place. Despite the factual distinction between the situation in *People v Chessman* (75 AD2d 187, *appeal dismissed* 54 NY2d 1016), wherein the jury did not appear to have comprehended the culpable mental state necessary for finding the accused guilty of robbery, with the present matter, the court's observation in that case is equally pertinent here. As the court stated *(supra,* at 194-195):

"The trial court's responses were wholly inadequate and at no time were the jurors afforded such proper instructions as would enable them to undertake their fact-finding tasks with a full understanding of the law. Their continued confusion, by the court's failure to provide understandable and complete instructions, is best described in the following language contained in *Schwabach v Beth Israel Medical Center* (72 AD2d 308, 312): 'Here, the jury, after the initial charge had been read to it, made clear its confusion and requested enlightenment on a specific matter. Their inability to relate the facts in issue to the law as charged to them is indicated by the questions propounded shortly after receiving the court's original charge. When, as in this case, the jury pinpoints their lack of understanding they are entitled to something more than that which led to their original confusion. They should have

been instructed on the precise subject upon which they manifested their doubt *(Kramer v Chatham Green, Inc.,* 38 AD2d 931; *People v Botteri,* 50 AD2d 540; *Sanabria v City of New York,* 42 AD2d 615).' "

The Judge's remark to the jury in the present case that it "must be the person's conscious aim or objective to take property" and that "it's up to you to determine whether force was used and at what point the force was used and whether or not the force prevented the person from having his property being taken from him" was not only a dubious pronouncement of the law but did not explain to the jury that at the time of her attack upon the complainant, defendant had to possess the intent to steal *(People v Lopez,* 58 AD2d 516; *see also, People v Nixon,* 156 AD2d 144, 146 [wherein the court reduced a conviction for third degree robbery to petit larceny because there was inadequate proof that "defendant's use of force was accompanied by any intention to assert or reassert control over the (the stolen property)"]). While in some jurisdictions there appears to be "a question as to the robbery liability of one who strikes another, perhaps intentionally but with no intent to steal * * * and who then, seeing his adversary helpless, takes the latter's property", such a fact pattern does not constitute robbery in New York State (2 LaFave & Scott, Substantive Criminal Law § 8.11 [e], at 453). In *People v Smith* (79 NY2d 309, 312), the Court of Appeals declared that:

"Stated simply, the issue is whether the 'for the purpose of' language sets forth a *mens rea* element of robbery. In other words, must a defendant *intend* that the use of force will either compel a person to deliver up the property, or prevent resistance to the taking of property, or is it sufficient that the force employed has that unintended effect? We conclude that under this statute, a defendant must intend that the threatened or actual use of physical force have one of the enumerated consequences.

"We reach this conclusion because, giving the words their ordinary meaning, the statute is difficult to read otherwise. The statute defines robbery as a larceny accompanied by force employed *for one of the purposes* set forth. Logically, a defendant cannot act with a specified purpose unless an intent is formed to carry out that purpose."

The three dissenters agreed with the majority's interpretation of robbery. The members of the Court of Appeals differed only as to whether the evidence in *People v Smith (supra)* was adequate to prove robbery, not with the statutory definition of robbery. Thus, it was stated in the dissenting opinion *(People v*

*Smith, supra,* at 315) that: "Although the Court concedes that defendant's conviction for robbery cannot stand unless there was sufficient evidence presented at his trial from which the jury could rationally find that he threatened the complainant with the 'conscious objective' of either compelling her to deliver up her property or preventing resistance to his taking or retention of that property, it nevertheless goes on to conclude that the People fully met their burden in this regard. My own review of the record, however, compels me to disagree. The proof adduced below was simply too equivocal to establish that defendant acted with the mental culpability necessary to commit robbery. Indeed, the contrary conclusion reached by the majority, in my view, virtually eviscerates that element of the crime."

The court's instructions in the instant matter offered no guidance to overcome the jury's obvious confusion so as to enable it to evaluate the particular facts involved herein. Defendant claimed that she utilized force in reaction to the complainant's abusive behavior and took his trousers to humiliate him and to assist her escape, not to convert his property. She also asserted that she did not decide to appropriate his trousers until after she had already applied force and subdued him. Under these circumstances, it was essential that the court clarify for the jury the question of whether intent must precede force. Indeed, the jury's continuing bewilderment in view of the Judge's failure to provide elucidation on this point is demonstrated by the subsequent request by the jury for a written description of the intentional use of force.