Raymond D. CHEELY, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–4107.

Court of Appeals of Alaska.

April 23, 1993.

**654**

John E. McConnaughy, III, and Larry Cohn, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Raymond D. Cheely was found guilty of second-degree theft, AS 11.46.130(a), following a jury trial in the Anchorage superior court. Cheely appeals his conviction, contending that the evidence against him should have been suppressed, and also that the trial court misinstructed the jury. We affirm.

An Anchorage grand jury indicted Cheely for stealing a black 1990 Chevrolet S–15 pickup truck from Alaska Sales and Service, an Anchorage car dealer. The theft was discovered after Anchorage police were called to Chugiak High School to in-

vestigate a pickup truck found parked in the school's faculty parking lot. School officials were concerned because the pickup had two shotguns in the rack in the cab, and the truck did not belong to any member of the faculty. Because no one else had permission to park a vehicle in the faculty lot, school officials called upon the police to find out who owned the truck.

The police checked the license plate number on the truck and found that the vehicle was apparently registered to Cheely. However, the registration records contained a vehicle identification number (VIN) that was different from the VIN visible on the truck's dashboard. When the police spoke with Cheely, he affirmed that he was the owner of the truck. The police asked Cheely about the discrepancy between the vehicle identification numbers. Cheely told the officers that the license plates had actually belonged to another Chevy pickup, a 1988 S–10, that had been destroyed in a fire. Cheely said that, after his first truck was destroyed, he had built a new truck from assorted parts of other trucks, then had placed the license plates from the destroyed truck on his newly assembled vehicle.

The police took the truck from Cheely and later scrutinized its structure. The officers ascertained that, despite Cheely's claim that the vehicle had been assembled from parts of several other trucks, the vehicle identification numbers stamped on the engine, the transmission, and the frame all matched the VIN displayed on the dashboard. Because this recurring VIN did not match the VIN listed in the registration records, the officers investigated further and discovered that the truck was in fact a 1990 Chevy S–15 that had been stolen from Alaska Sales and Service.

Cheely's attorney filed a motion to suppress all evidence the police obtained from their detailed examination of the truck. Cheely asserted that the police's warrantless seizure of the truck had been illegal. The State responded that Cheely had given the officers permission to take his truck and search it.

The superior court held an evidentiary hearing on Cheely's suppression motion. The only witness was Anchorage Police Officer Leslie Withers. Officer Withers testified that he and another officer, Dennis Long, had gone to Chugiak High School to investigate the truck. The two officers spoke with Cheely in a school conference room. Cheely affirmed that he was the owner of the truck. The officers asked Cheely about the variance between the truck's VIN and the VIN on record under Cheely's license plate number, and Cheely gave his explanation (that the original truck had been destroyed and that he had assembled the present truck from assorted parts of other vehicles). Cheely then gave the officers permission to search his truck.

Withers produced the "search waiver" form that Cheely had signed in his and Officer Long's presence. Withers testified that this form "advises that Mr. Cheely is giving myself, Officer Long, and the Anchorage Police Department permission to search his 1988 Chevy truck ... and it authorizes me to take from the [truck] any letters, papers, materials, or other property which I desire." Withers further testified that Cheely had not been under arrest when he signed the form, that Cheely had not expressed any reluctance to have the police search the truck, and that Cheely had not been threatened in any way or promised anything to induce him to consent to the search. Additionally, from the time Cheely signed the consent form until the police towed his truck away, Cheely never indicated that he had changed his mind about consenting to the search.

On cross-examination, Cheely's attorney focused on the fact that the written consent-to-search form, while it explicitly authorized the police to search the truck and its contents, did not specifically authorize the police to impound the vehicle (tow it away). Cheely's attorney attempted to demonstrate that Cheely had never consented to the seizure (as opposed to the search) of the truck. However, Officer Withers disagreed:

DEFENSE ATTORNEY: And did [Cheely] give you permission to seize the truck, as opposed to ... [seizing] papers

and things of that nature? Basically, he never said, "Go ahead and take the truck". You just took the truck?

WITHERS: No, that's not correct.

DEFENSE ATTORNEY: So when did he say, "Go ahead and take the truck"?

WITHERS: Mr.—as a matter of fact, Mr. Cheely was told while we were still inside the [school] building, when we were simply sitting down, speaking, Mr. Cheely was told that, because of the conditions present there [at the school], that it might not be possible to do [the] complete inspection of the vehicle which might be necessary.... Mr. Cheely had been told before we exited out into the parking lot, where we were discussing this, that we might not be able to do a full inspection there and we'd need to take it into the station or into the police department to examine it. And he signed the waiver and indicated that he was not objecting to that.

After pointing out again that the wording of the consent-to-search form did not seem to encompass seizure of the truck, Cheely's attorney announced to the court, "I don't have anything further, Your Honor. I'm willing just to rely without argument on the testimony." Even after the prosecutor presented a short argument opposing suppression, Cheely's attorney reiterated, "I have no argument."

Superior Court Judge Milton M. Souter declared that he believed the State had met its burden of proving that Cheely had consented to the seizure and search of the truck. Judge Souter agreed with Cheely that the wording of the consent-to-search form did not explicitly authorize the police to seize the truck and tow it away, but Judge Souter found that Cheely had verbally consented to the seizure. Judge Souter further found that Cheely's consent had been uncoerced and had been otherwise valid. Based on these conclusions, Judge Souter denied Cheely's suppression motion.

 On appeal, Cheely does not question the superior court's finding that he verbally consented to the impoundment of his truck. Instead, Cheely asserts that his verbal consent was obtained through "bait and switch" tactics—the police first obtaining his consent to a search of the vehicle, then telling him that it was necessary to tow the truck away in order to accomplish this search. Cheely argues that the evidence presented at the hearing was inadequate to establish that the police explained the true scope of the consented-to search. Cheely suggests that, after he signed the consent form, he may not have understood that he still retained the right to insist that the truck remain on-site.

None of these claims was advanced in the superior court. Cheely's written motion to suppress simply asserted that a warrantless search and seizure had occurred, and that it was the State's burden to justify its actions. The State responded that Cheely had consented to the search and seizure. In support of this argument, the State presented the testimony of Officer Withers. Withers testified that he and his fellow officer told Cheely that they not only wished to search the truck but also wished to remove the truck to another location to perform this search. Withers also testified that Cheely freely consented to this, and that Cheely never indicated he wished to reconsider or revoke that consent. Following this testimony, Cheely's attorney explicitly told Judge Souter that he had nothing further to say, and that he was willing "to rely without argument on the [officer's] testimony".

Thus, Cheely's claims are not preserved, and we will not consider them. *Burford v. State*, 515 P.2d 382, 383 (Alaska 1973); *Lumbermen's Mutual Casualty Co. v. Continental Casualty Co.*, 387 P.2d 104, 109, 111–12 (Alaska 1963). Moreover, even if we were to entertain Cheely's claims, the record contains no evidence to support Cheely's suggestions that his consent to the impoundment was something less than knowing and voluntary. His arguments in support of this claim are based on complete speculation. We affirm the superior court's denial of Cheely's suppression motion.

Cheely's second claim on appeal concerns the trial judge's answers to questions posed by the jury during deliberations.

The State's theory at trial was that Cheely had stolen the pickup truck from the Alaska Sales and Service lot. In his short opening statement, Cheely's attorney told the jury that, in the main, the defense was not going to dispute the testimony of the State's witnesses; instead, the defense was going to argue that the State had failed to prove beyond a reasonable doubt that Cheely had stolen the pickup. In closing argument, the defense theory of the case became more explicit: Cheely conceded that the State might have proved that he had purchased or taken possession of the pickup knowing it was stolen, but Cheely argued that the State had not proved beyond a reasonable doubt that Cheely himself had physically removed the truck from the dealer's lot.

> DEFENSE ATTORNEY: So what is the other reasonable alternative? The other reasonable alternative is that someone else stole the truck and Ray Cheely ended up with it, and that's not what he's charged with in this case. He's not charged with receiving the stolen truck. He's not charged with buying a stolen truck. He's not charged with driving a stolen truck. He's charged with stealing the truck, and he didn't steal the truck.
>
> . . . . .
>
> [T]here's no question [that the defendant "obtained the property of another"]. Ray Cheely had the property of another—he had the truck. Did he actually go to the lot and obtain it? No. Did he obtain it through buying it from somebody? Possibly. Did he get it from someone? Possibly. We don't know how Ray Cheely got that truck. But, you know, it's equally [likely] that he bought the truck from someone who had stolen it.
>
> . . . . .
>
> I'm arguing reasonable alternatives.... [One] reasonable alternative is [that] someone else [stole] that car and Ray Cheely ended up with it, and he didn't even know it was stolen. The only thing he knew is he got a real cheap car. And maybe he had a gut feeling it was stolen, but that still doesn't make him

the person who stole it from this dealership. On that, you have to find him not guilty.

The prosecutor responded to this argument by reiterating the reasons to believe that Cheely himself had been the person who removed the truck from the lot.

During its deliberations, the jury asked the court if Cheely's argument was really a defense to theft. The jurors sent the court a note which asked if they were required to find that Cheely had personally taken the truck from the dealer's lot, or if they had to find merely that someone had taken the truck and that Cheely had then obtained it with intent to permanently deprive the owner.

Instruction 16 of the court's original jury instructions informed the jury that:

> A person commits the crime of theft in the second degree if, with intent to deprive another of property or appropriate property of another to himself or a third person, he or she obtains the property of another and the value of the property is $500 or more.
>
> In order to establish the crime of theft in the second degree, it is necessary for the state to prove beyond a reasonable doubt the following:
>
> First, that the event in question occurred at or near Anchorage and on or about January 27, 1990;
>
> Second, that Raymond D. Cheely, Jr., intended to deprive another of property or appropriate property of another to himself or a third person;
>
> Third, that the defendant obtained the property of another; and
>
> Fourth, that the value of the property was $500 or more.

The jurors' question to the court read:

> [In Instruction 16], does "event" mean [that] a theft occurred, or [does it mean that] RDC, Jr., stole a truck ...? Which way should this be interpreted[?] [D]oes [Instruction 16] mean "physically stealing [the] car off [the] lot", or what? ... Are we being asked if Raymond Cheely Jr. stole the truck off the lot?

Judge Souter told the parties that he proposed to answer the jurors' question this way:

In order for you to find the defendant guilty as charged in the indictment, it is not necessary that the evidence prove that he was the person who removed the vehicle from the Alaska Sales and Service lot, but it is necessary that the evidence prove that he obtained or appropriated the vehicle with culpable intent on or about January 27, 1990, as the terms "obtain" and "appropriate" are defined in Instructions Number 20 and 21.

Despite the fact that Cheely's defense was apparently premised on the distinction between theft by asportation and theft by receiving, neither of Cheely's attorneys objected to the court's proposal, and the court instructed the jury as indicated.

Later, the jury asked the court to clarify the culpable mental state required for the crime of theft if Cheely had not been the one who actually took the truck. At this point, Cheely's attorneys argued for the first time that it would be fundamentally unfair to allow the jury to convict Cheely on a theft-by-receiving theory. Judge Souter nevertheless gave the jury a further instruction on theft by receiving. When the jury convicted Cheely, the verdict form they returned to court stated that they had found Cheely guilty of "theft", without specifying the theory.

On appeal, Cheely renews his assertion that the trial court should not have allowed the jury to consider a theft-by-receiving theory. To analyze Cheely's arguments, it is necessary to examine the definition of theft contained in AS 11.46.100:

Sec. 11.46.100. **Theft defined.** A person commits theft if

(1) with intent to deprive another of property or to appropriate property of another to oneself or a third person, the person obtains the property of another;

(2) the person commits theft of lost or mislaid property under AS 11.46.160;

(3) the person commits theft by deception under AS 11.46.180;

(4) the person commits theft by receiving under AS 11.46.190;

(5) the person commits theft of services under AS 11.46.200;

(6) the person commits theft by failure to make required disposition of funds received or held under AS 11.46.210.

■ Cheely first argues that, because his indictment lists the charging statute as "AS 11.46.100(1)", there would be a material variance between the crime charged in the indictment and the crime for which Cheely was convicted if the jury found Cheely guilty of theft by receiving, which is listed in AS 11.46.100(4). Judge Souter ruled, however, that subsection (1) defines the crime of theft generally and is broad enough to include the specific instances of theft mentioned in subsections (2)–(6). Thus, Judge Souter concluded, a charge of theft under AS 11.46.100(1) encompasses both theft by asportation and theft by receiving. Judge Souter correctly interpreted the statute.

When the Alaska Criminal Code Revision Subcommission drafted our current Title 11, one of the Subcommission's stated goals was to consolidate the various pre-existing categories of theft crimes into one, all-embracing theft offense:

Existing [i.e., pre–1980] Alaska law ... retains the ancient distinctions between larceny, embezzlement[,] and obtaining money by false pretenses although these distinctions serve no practical purpose.... The effect of these [purposeless distinctions] on existing law is highlighted by Professors Wayne LaFave and Austin Scott:

We have seen that English legal history explains the fact that, in most American jurisdictions today, the wrongful appropriation of another's property is covered by three related but separate, non-overlapping crimes—larceny, embezzlement, and false pretenses. This fact, together with the fact that the borderlines between the three crimes are thin and often difficult to draw, has given rise to a favorite indoor sport played for high stakes in our appellate courts: A defendant, convicted of one of the three crimes, claims on appeal that, though he is

guilty of a crime, his crime is one of the other two. Sometimes this pleasant game is carried to extremes: A defendant, charged with larceny, is acquitted by the trial court (generally on the defendant's motion for a directed verdict of acquittal) on the ground that the evidence shows him guilty of embezzlement. Subsequently tried for embezzlement, he is convicted; but he appeals on the ground that the evidence proves larceny rather than embezzlement. The appellate court agrees and reverses the conviction. [Footnote omitted].

LaFave and Scott, *Criminal Law*, 673 (1972).

Today [i.e., in 1978], 42 states have either adopted or are considering revised criminal codes. Virtually all of these revisions have repudiated the unnecessary and outdated distinctions among the most common theft offenses. The Theft and Related Offenses Article of [our] Revised Code accomplishes this result in Alaska.

. . . . .

The primary purpose of the Theft Offense Article of the Revised Code is the consolidation of a number of crimes that have traditionally been thought of as theft offenses. The traditionally distinct crimes of larceny, larceny by trick, embezzlement, theft of mislaid property, obtaining property by false pretenses[,] and receiving stolen property are now combined into a single crime of "theft".

Alaska Criminal Code Revision, Tentative Draft (1978), Part 3, pp. 16–18.

As Judge Souter correctly perceived, AS 11.46.100 was drafted so that subsection (1) constitutes the general definition of theft, with subsections (2)–(6) being merely varying ways in which the basic crime defined in (1) can be committed. The Tentative Draft is explicit on this point:

Subsection (1), referring to a person who "takes, appropriates, obtains[,] or withholds the property of another" with the requisite intent is broad enough to cover all forms of thievish conduct. *See State v. Jim* [13 Or.App. 201] 508 P.2d

462 (Or.App.1973), interpreting the identical language in the Oregon consolidated theft statute. However, as a concession to the potential hold of tradition, subsections (2)–(4) specifically list conduct traditionally not included within the definition of common law larceny.

Subsections (2)–(4) refer the reader to specific statutes describing in detail how theft of lost property, theft by deception[,] and theft by receiving may be committed. *It is important to note that the conduct described in these specific statutes do not create separate crimes.* [For example, there] is no separate offense of theft by deception in the Revised Code.

Tentative Draft, Part 3, p. 19 (emphasis added). *See also* the legislative commentary to AS 11.46.100: 1978 Senate Journal, Supplement No. 47 (June 12), pp. 30–32.

The drafters also rejected the particular argument Cheely raised at his trial—that theft by asportation was an offense distinct from theft by receiving:

The definition of "obtain" . . . extends the concept of taking to include constructive acquisition of property. . . . [A]sportation or "carrying away" of property is not an element of theft under the consolidated theft statute[.]

Tentative Draft, Part 3, p. 20, and legislative commentary, 1978 Senate Journal, Supp. No. 47, p. 31.

To further accomplish the goal of consolidating theft offenses, the drafters proposed and the legislature enacted AS 11.46.110. That statute reads, in pertinent part:

Sec. 11.46.110. **Consolidation of theft offenses: Pleading and proof.**

. . . . .

(b) An accusation of theft is sufficient if it alleges that the defendant committed theft of property or services of the nature or value required for the commission of the crime charged without designating the particular way or manner in which the theft was committed.

(c) Proof that the defendant engaged in conduct constituting theft as defined

in AS 11.46.100 is sufficient to support a conviction based upon any indictment, information, or complaint for theft.

The Criminal Code Revision Subcommission explained the need for AS 11.46.110:

> Under the Revised Code, a charge of theft is sufficient without designating the particular means by which the property was obtained.... The necessity for this section was acknowledged by the primary drafter of the Oregon Revised Criminal Code.
>
>> [D]espite the substantial consolidation of theft offenses, the tendency to cling to the old categories is so strong that it is considered advisable to state expressly what logically follows [from the legal consolidation].... [T]he state will not be required in most cases to designate the particular way or manner in which the crime was committed. A general allegation that the defendant committed theft of property of the nature or value required ... will be supportable by proof that he engaged in conduct constituting theft as defined by the Revised Code. The proof might be that the defendant engaged in conduct amounting to common law larceny, "embezzlement", "theft by receiving", or some other type of thievish conduct.

Tentative Draft, Part 3, pp. 22–23, quoting Paillette, "The Oregon Theft Laws: Consolidation v. Conglomeration", 51 Ore. L.Rev. 525 (1972).

The legislative intent underlying AS 11.46.100 and AS 11.46.110 was explicitly recognized and adopted by this court in *Williams v. State*, 648 P.2d 603 (Alaska App.1982). The defendant in that case was convicted of the theft of equipment that had disappeared from the yard of a Fairbanks construction company. The indictment charged that Williams "did unlawfully commit the theft" of the equipment, a "violation of AS 11.46.130(a)". *Williams*, 648 P.2d at 605 n. 3. On appeal, Williams asserted that this indictment had not given him proper notice of the offense with which he was charged because it did not allege a specific theory of theft:

> Williams claims that the evidence presented at the grand jury showed that the state's theory was that Williams had personally stolen the [equipment] and that this is the charge ... he was prepared to defend. However, at the close of the evidence at trial the state offered jury instructions on the charge of theft by receiving[,] and the judge instructed only on this theory of theft.

*Williams*, 648 P.2d at 605–06. Williams asserted that he had been denied due process, but this court rejected Williams's argument:

> We believe that the indictment adequately informed Williams of the offense with which he was charged and [we] therefore find no due process violation.... AS 11.46.110(b) provides that:
>
>> (b) an accusation of theft is sufficient if it alleges that the defendant committed theft of property or services of the nature or value required for the commission of the crime charged without designating the particular way or manner in which the theft was committed.
>
> ... [Under] this statutory scheme[,] a person charged with theft is put on notice that he may be convicted of theft under different theories.
>
> The accused is not without remedies in finding out more specifically the crime with which he is charged. He has access to the record of the grand jury proceeding.... An accused can also ask for a bill of particulars.... Liberal discovery of the state's case is also permitted.... Given these liberal discovery rules, we conclude that an accused does have the ability to obtain adequate discovery of the state's case and to get adequate notice of the state's theory or theories of prosecution. We therefore find no merit to Williams' attack on the indictment.

*Williams*, 648 P.2d at 606.

Several other jurisdictions with similar consolidated theft statutes have seen appeals in which a defendant, indicted for theft under the general definition, objected when the jury was instructed on theft by receiving. These courts, recognizing that a

general charge of theft encompasses all the various forms of theft, have upheld the defendants' convictions. *State v. Winter,* 146 Ariz. 461, 706 P.2d 1228, 1230–33 (App. 1985); *Commonwealth v. Day,* 599 S.W.2d 166 (Ky.1980); *State v. Taylor,* 570 P.2d 697 (Utah 1977); *State v. Jim,* 13 Or.App. 201, 508 P.2d 462 (1973); *State v. Donnelly,* 124 Conn. 661, 2 A.2d 214 (1938). *See also Cameron v. Hauck,* 383 F.2d 966 (5th Cir.1967), *cert. denied,* 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 828 (1968) (federal habeas corpus litigation: conviction affirmed against the defendant's challenge that he had not adequately been apprised of the charge against him when evidence showed theft by false pretenses rather than by trespassory taking), and *People v. Martinez,* 37 Colo.App. 71, 543 P.2d 1290 (1975) (subject-matter jurisdiction over the crime upheld when the evidence showed that the defendant, even though he had unlawfully taken the property in another state, had unlawfully withheld the property while in Colorado).

We therefore reject Cheely's argument that, because his indictment charges theft under AS 11.46.100(1), it was improper to instruct the jury on theft by receiving. Theft by receiving is not a separate crime; it is but one of the methods by which theft can be committed. Under AS 11.46.110(b) and this court's decision in *Williams,* Cheely was on notice that he might be convicted of theft by receiving even if he could show that he did not personally take the truck from the Alaska Sales and Service lot. The evidence supported the inference that Cheely had received the truck with knowledge that it was stolen, or with reckless indifference to whether it was stolen, and with intent to appropriate the truck to his own use. *Ace v. State,* 672 P.2d 159, 161–62 (Alaska App.1983). Thus, an instruction on theft by receiving was presumptively proper.

■ Cheely, however, argues that he was prejudiced by the peculiar manner in which his case was litigated. As described above, Cheely's defense was that, while he might have committed theft by receiving, he was not the person who actually took the truck off the dealership lot. Cheely asserts that he formulated this defense in reliance on the wording of the indictment:

> The grand jury charges that on or about the 27th day of January, 1990, at or near Anchorage, ... Raymond D. Cheely, Jr., did unlawfully commit theft of a black 1990 GMC S–15 pickup truck, ... the property of Alaska Sales and Service, having a value of $500 or more.
>
> All of which is ... contrary to and in violation of AS 11.46.130(a)(1) and against the peace and dignity of the State of Alaska.

The statute mentioned in this indictment, AS 11.46.130(a)(1), defines the crime of theft in the second degree. It states that a person commits second-degree theft "if the person commits theft as defined in AS 11.46.100 and the value of the property ... is $500 or more".

The wording of Cheely's indictment is essentially the same as the wording of the indictment in *Williams,* wording that this court declared was sufficient to notify the defendant that he might be convicted of theft by receiving. Nothing in the wording of the indictment restricted the State to pursuing a theory of theft by asportation to the exclusion of other theories. If Cheely believed that this indictment allowed him to defend by asserting that he was guilty, not of theft by asportation, but of theft by receiving, his belief was unreasonable and completely unfounded in law.

■ Cheely further asserts, however, that, even if the indictment itself did not limit the potential theories of theft, the prosecutor's conduct of the litigation implicitly committed the State to a theft-by-asportation theory. Cheely points out that the prosecutor did not seek a jury instruction on theft by receiving and did not argue this theory, even as an alternative, during the State's summation to the jury.

Cheely relies on this court's decision in *Rollins v. State,* 757 P.2d 601 (Alaska App. 1988). In *Rollins,* the defendant was indicted for third-degree assault—placing another person in fear of imminent serious physical injury. AS 11.41.220(a)(1). After the close of the evidence, the defense ini-

tially requested a jury instruction on the lesser included offense of fourth-degree assault (placing another in fear of imminent, non-serious physical injury) but then withdrew this request. The State did not object to submitting the case to the jury with the jury's deliberations limited to third-degree assault. *Rollins,* 757 P.2d at 602.

During final argument, Rollins's attorney focused on the element of serious physical injury, arguing that the victim might have reasonably feared some physical injury but not the serious physical injury necessary for conviction of third-degree assault. The jury, apparently crediting the defense attorney's argument, sent a note to the judge asking what they should do if they found that the victim had reasonably feared only non-serious injury. In reply, and over Rollins's objection, the judge instructed the jury on fourth-degree assault, and the jury convicted Rollins of this lesser charge. *Id.*

On appeal, this court reversed Rollins's conviction. This court recognized that Rollins was, as a matter of law, on notice that fourth-degree assault was a potential lesser included offense. Nevertheless, this court held that, after the State and the trial judge agreed to send the case to the jury solely on the charge of third-degree assault, Rollins was entitled to rely on this posture of the case when formulating his summation to the jury. More specifically, this court concluded that Rollins had justifiably relied to his detriment on the restricted charge when he decided to focus his argument on the State's failure to prove the element of fear of imminent "serious physical injury". *Id.* at 602–03.

Cheely analogizes his case to *Rollins.* He argues that, even if he could not justifiably rely on a theft-by-receiving "defense" before the evidence closed, he became entitled to rely on this "defense" when the prosecutor failed to explicitly seek conviction under a theft-by-receiving theory and allowed the case to go to the jury under the general charging language of AS 11.46.100. At this point, Cheely asserts, he could justifiably argue to the jury that he should be acquitted because he had only received stolen property and had not stolen the truck himself.

Cheely's argument ignores the fact that there no longer exist separate crimes of "theft by taking" and "theft by receiving". As Judge Souter recognized, a person who takes possession of stolen property with the required culpable mental states has committed the crime defined in AS 11.46.-100(1) and alleged in Cheely's indictment—has, "with intent to deprive another of property or to appropriate property of another to oneself or a third person, ... obtain[ed] the property of another".

Judge Souter's original packet of jury instructions defined the crime of theft in the broad language of AS 11.46.100(1). The court instructed the jury that Cheely was guilty of theft if, "with intent to deprive another of property or appropriate property of another to himself or a third person, he ... obtain[ed] the property of another". In explanation of this main instruction, the jury was informed that

> "deprive another of property" means to withhold property of another or cause property of another to be withheld permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to that [other] person[;]

that

> "appropriate property of another to oneself or to a third person" means to exercise control over property of another or aid a third person to exercise control over property of another, permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of the property[;]

and that

> "[o]btain" means to bring about a transfer or purported transfer of a legal interest in the property to the obtainer or another[,] or to exert control over property of another.

As discussed above, the drafters of the criminal code crafted these definitions to be broad enough to cover all the methods of theft, including theft by receiving. Thus, the jury's original instructions, without any

supplementation, allowed the jury to convict Cheely of theft if they were convinced that he had committed theft by receiving.

In *Rollins*, this court reversed the defendant's conviction because the defense attorney had detrimentally relied on the government's acquiescence in the defendant's proposal to litigate the case on the main charge alone, without the alternative of a lesser included offense. The government's failure to object when the defendant withdrew his proposed instruction on fourth-degree assault amounted to the government's affirmative indication that it was willing to have the case litigated "all or nothing". In contrast to Cheely's case, the original jury instructions in *Rollins* did not allow the jury to return a verdict on any crime or theory other than the one argued by counsel. The defense attorney in *Rollins* could reasonably and justifiably formulate his final argument in reliance on this fact.

Cheely, however, can claim no similar detrimental reliance. As discussed above, the court's initial instructions to the jury (which Cheely does not challenge) encompassed theft by receiving as well as theft by asportation. Unlike the defendant in *Rollins*, Cheely has no justifiable claim that he formulated his theft-by-receiving "defense" in reliance on the court's original instructions. And while it is true that the prosecutor's final argument to the jury did not urge the jury to consider a theft-by-receiving theory, the prosecutor never affirmatively disavowed reliance on such a theory. In short, when Cheely's attorney formulated his summation to the jury, he had no justifiable expectation that theft by receiving would be a defense to the charge against his client.

In the absence of justifiable, detrimental reliance of the kind that was present in *Rollins*, Cheely's "defense" that he committed theft by receiving rather than theft by asportation amounted to a concession that he committed the crime he was charged with, in a slightly different manner than argued by the prosecution but in a manner still covered by the definition of theft contained in the court's instructions

to the jury. Granting an acquittal to Cheely under these circumstances would return us to the days of "indoor sport" decried by LaFave and Scott and specifically rejected by the Alaska legislature when it enacted our present theft statutes. We uphold Judge Souter's decision to instruct the jury on theft by receiving in response to their questions.

The judgement of the superior court is AFFIRMED.