Timothy BOWERS, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–8825.

Supreme Court of Alaska.

June 2, 2000.

---

18.   *See* Op. at 1208.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Petitioner.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Near the shores of Deadman Lake, fifty miles west of Fairbanks, two intoxicated neighbors sharing a rustic hot tub had an argument that became violent. William Peacock testified that Timothy Bowers pointed a .44 magnum revolver at him and pulled the trigger. When the revolver "clicked" but did not fire, Bowers fetched a .22 caliber rifle, chambered a round, and fired into the air. Bowers was indicted for assault by means of "a firearm." The jury, as permitted by a supplemental instruction given after it began deliberating, convicted Bowers of assault for using the rifle. We reject Bowers's argument that the state constructively (and impermissibly) amended the indictment to charge use of the rifle. But because the state, to prove an assault, relied only on the revolver, and not the rifle, it was error to give the jury the supplemental instruction. We therefore reverse and remand.

### II. FACTS AND PROCEEDINGS

In August 1996 Timothy Bowers was building a cabin for his parents on Deadman Lake. William Peacock and his wife, Marie, lived in a cabin about 300 yards away.

Bowers and William Peacock spent the afternoon of August 7 hauling supplies and drinking whiskey and beer. At Bowers's invitation, the Peacocks joined Bowers that evening in his hot tub. After an hour or two, Marie Peacock returned home while Bowers and William Peacock remained in the hot tub. The principals' versions of subsequent events diverge dramatically.

Peacock testified that Bowers suddenly got out of the hot tub, entered his nearby cabin, returned with a .44 magnum revolver, and pointed it at him. Bowers pulled the trigger, but the revolver did not fire, possibly because it was not loaded. Peacock testified that he saw Bowers reenter the cabin and, through the doorway, watched Bowers pick up a .22 caliber rifle and chamber a round; at that point Peacock went over the side of the hot tub and ran for his three-wheeler. During Peacock's flight, he heard several shots fired from the rifle.

Bowers's attorney argued at trial that Peacock's story was simply "a drunken lie." Instead, Bowers testified that as he and Peacock were discussing their dogs, Peacock got steadily angrier, threatened to shoot Bowers's dog, and eventually punched Bowers, giving him a bloody nose. Bowers responded by "flipping" Peacock out of the hot tub. Peacock then climbed onto the deck, swearing at Bowers and threatening to kill him.

Bowers photographed Peacock, shoved him off the deck, and told him to go home.

The grand jury indicted Bowers for third-degree assault.[1] The indictment charged Bowers with recklessly placing Peacock in fear of imminent serious physical injury "by means of a dangerous instrument, a firearm." The indictment did not specifically mention either the revolver or the rifle. The prosecutor also charged Bowers by information with fourth-degree misconduct involving weapons for possessing the revolver while he was intoxicated.[2] The information specifically referred to the revolver.

During its deliberations, and following the close of evidence and the final arguments, the jury sent a note asking whether the assault charge was based exclusively on the .44 revolver or included the .22 rifle. The trial court, over Bowers's objection, instructed the jury that it could find Bowers guilty of assault based on Bowers's use of either weapon. To insure unanimity, the trial court instructed the jurors that before they could return a guilty verdict "all of you must agree that the assault occurred by means of a .44 cal. handgun or all of you must agree that the assault occurred by means of a .22 rifle." The jury then found Bowers guilty of assaulting Peacock and specified on the verdict form that the rifle was the "weapon in question." The jury acquitted Bowers of the charge of weapons misconduct for possessing the revolver while intoxicated, possibly because it decided the revolver was never loaded.

The court of appeals affirmed Bowers's conviction.[3] It held that the indictment was general enough to cover an assault charge based on either weapon and that Bowers suffered no prejudice because his defense was a complete denial of assaultive conduct. We granted Bowers's petition for hearing and ordered full briefing.

## III. DISCUSSION

Bowers was convicted of assaulting Peacock with the rifle. Bowers argues that the state never pursued this theory of assault before the grand jury or the trial jury. He first contends that allowing the trial jury to consider his use of the rifle effectively allowed the state to amend the indictment. Alternatively, he asserts that he did not have notice of the charge on which he was convicted. Either way, he contends that he had no notice that he was to defend against a charge relating to the rifle. The state responds that Bowers was on notice from the grand jury record that the assault charge included his conduct with the rifle; it contends that Bowers is simply arguing that the jury is bound by the theory emphasized by the state at trial.

### A. Standard of Review

A claim that the indictment was amended is a question of law subject to de novo review.[4] "Alaska Rule of Criminal Procedure 7(e) permits the amendment of indictments so long as the amendment does not charge an additional or different offense, and the defendant is not prejudiced."[5] A conviction for an offense different from the one charged is a fatal variance and requires reversal.[6] Bowers's argument that the state's conduct at trial gave him no notice that it was claiming that Bowers assaulted Peacock

---

1. AS 11.41.220(a)(1)(A) provides:

   A person commits the crime of assault in the third degree if that person
   (1) recklessly
   (A) places another person in fear of imminent serious physical injury by means of a dangerous instrument....

2. See AS 11.61.210(a)(1).

3. See Bowers v. State, Mem. Op. & J. No. 3881, 1998 WL 575133 (Alaska App., Sept. 9, 1998).

4. See State v. Patterson, 740 P.2d 944, 946 n. 7 (Alaska 1987) (noting that questions of statutory interpretation are reviewed under independent

judgment standard); cf. Ford v. Municipality of Anchorage, 813 P.2d 654, 655 (Alaska 1991) (stating that this court exercises its independent judgment when interpreting civil rules).

5. Bell v. State, 716 P.2d 1004, 1005 (Alaska App. 1986). Alaska Criminal Rule 7(e) states:

   Amendment of Indictment or Information. The court may permit an indictment or information to be amended at any time before verdict or finding if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced.

6. See Simpson v. State, 705 P.2d 1328, 1331 (Alaska App.1985).

with the rifle is a question of law that we review de novo.[7]

### B. *Was the Indictment Constructively Amended?*

■ Indictments furnish accuseds with descriptions of the charges against them so they can prepare a defense and claim double jeopardy if they are again charged with the same offense.[8] An indictment's language, read in conjunction with the grand jury record, determines the charge for which the defendant is indicted.[9]

■ Bowers argues that the indictment charged assault with "a firearm" and therefore only covered his alleged conduct with the revolver. He also contends that the fourth-degree misconduct charge, which referred specifically to the revolver, "led [him] to believe" that conduct involving the revolver was the basis for both charges. Therefore, he claims, allowing the jury to consider his conduct with the rifle as an alternative basis for conviction in effect allowed the state to amend the indictment. The state asserts that the indictment was broad enough to cover both acts and thus was never effectively amended.

In essence, Bowers argues that the indictment's language did not give him notice of the full charge against him. In *Lupro v. State*[10] we made it clear that "[i]t is not necessary that such [notice] be contained in the indictment if it was provided in some other form."[11] We also recognized in *Lupro* that indictments should be construed liberally.[12]

Bowers acknowledges that the grand jury transcript shows that the grand jury heard evidence about his use of the rifle,[13] but he argues that this evidence was only presented to corroborate his state of mind when he pointed the revolver at Peacock.[14] We disagree. The transcript reveals that the grand jury heard evidence permitting a conclusion that Bowers engaged in assaultive conduct with both weapons. Peacock's grand jury testimony discussed Bowers's use of both weapons. Peacock's wife testified before the grand jury that she heard shots from a .22 caliber rifle. Asked about a Polaroid photograph of the rifle, Peacock responded that it was the firearm Bowers "pulled the bolt back on and was evidently shooting at me with." Finally, a grand juror asked the prosecutor if firing at a person would be first-degree assault. The prosecutor answered that shooting to scare someone would be third-degree assault. Given the grand jury evidence that Bowers had fired the rifle, but not the revolver, during the hot-tub incident, the grand juror's question and the prosecutor's answer contextually could have referred only to the rifle. Thus, the grand jury transcript actually revealed to Bowers that use of the rifle was a potential basis for the third-degree assault charge, and was not necessarily merely corroborating evidence of an assault with the revolver.

This is not a case like *Bell v. State*,[15] where the grand jury was specifically instructed to take certain evidence into account for limited purposes. In *Bell*, the complainant testified before the grand jury that the defendant severely beat her on two occasions several

---

**7.** *See Turney v. State*, 936 P.2d 533, 538 (Alaska 1997); *Langdon v. Champion*, 752 P.2d 999, 1001 (Alaska 1988). Because the superior court did not make factual findings on this issue, we review the record independently.

**8.** *See Kott v. State*, 678 P.2d 386, 389 n. 4 (Alaska 1984).

**9.** *See Mustafoski v. State*, 867 P.2d 824, 830 (Alaska App.1994); *Azzarella v. State*, 703 P.2d 1182, 1185–86 (Alaska App.1985).

**10.** 603 P.2d 468 (Alaska 1979).

**11.** *Id.* at 472 (citations omitted).

**12.** *See id.* at 472–73; *see also Hansen v. State*, 845 P.2d 449, 453 (Alaska App.1993) (recogniz-

ing "well-established" policy of construing indictments liberally).

**13.** *See Lupro*, 603 P.2d at 472 ("[t]he bases for the claims made by the state were clear from the grand jury testimony").

**14.** Bowers incorrectly claims that the trial court agreed that the state had not been pursuing a charge based on the rifle before the grand jury. The court simply acknowledged that the state had presented to the grand jury evidence regarding the rifle.

**15.** 716 P.2d 1004 (Alaska App.1986).

days apart.[16] The grand jury was specifically instructed to take evidence of the first incident into account only to the extent that it showed motive and state of mind for the second incident.[17] The resulting indictment only charged a single assault, yet the trial court permitted the jury to use both incidents as alternative bases for conviction despite the limiting instruction given to the grand jury.[18] Because of this, the court of appeals reversed.[19] In Bowers's case, the grand jury received no such limiting instruction regarding the evidentiary purpose of Bowers's use of the rifle.

We therefore conclude that the court did not permit the state to constructively amend the indictment.

### C. Did the State at Trial Disavow Reliance on the Rifle as a Basis for Conviction?

■ We next consider whether the state at trial affirmatively disavowed any reliance on the rifle as a basis for conviction on the assault charge. The state can disavow reliance on a theory of guilt, even if the indictment encompasses that charge.[20] The question is whether the prosecution's conduct at trial created a reasonable expectation that it was not claiming that Bowers's use of the rifle, although technically within the scope of the indictment, was a basis for conviction on the assault charge.[21]

Two court of appeals decisions addressed similar circumstances. The state urges us to follow Cheely v. State,[22] while Bowers urges us to follow Rollins v. State.[23]

In Cheely, the defendant was indicted for stealing a pickup truck from a dealer lot.[24] Cheely defended on the ground that while the state had shown that he came into possession of the truck knowing it was stolen, he did not physically take the truck from the lot himself.[25] Cheely was convicted of second-degree theft.[26] On appeal, he argued that it was error to convict him on a theft-by-receiving theory when the state had relied on a theft-by-asportation theory at trial.[27] The court of appeals rejected this argument, noting that under Alaska's theft statute, a person charged with theft is automatically on notice that he or she may be convicted under different theories.[28]

In Rollins, the defendant was charged with third-degree assault for recklessly placing a police officer in fear of imminent serious physical injury by means of a dangerous instrument.[29] While the parties were formulating jury instructions, Rollins withdrew a request for an instruction on the lesser-included offense of fourth-degree assault and the state did not object.[30] The final jury instructions did not include any instructions on the lesser-included offense.[31] But during deliberations, in response to a question from the jury, the trial judge instructed the jury on the lesser-included offense and the jury

---

16. *See id.* at 1004–05.

17. *See id.* at 1005.

18. *See id.*

19. *See id.* at 1006.

20. *See Cheely v. State*, 850 P.2d 653, 661–62 (Alaska App.1993); *Rollins v. State*, 757 P.2d 601, 602–03 (Alaska App.1988).

21. The question is not whether there was a fatal variance between the indictment and the evidence presented at trial, because we concluded above that the indictment charged Bowers with assault based on his conduct with both the revolver and the rifle. Therefore, this is not a case like *People v. Fata*, 184 A.D.2d 206, 586 N.Y.S.2d 780, 784 (1992), where the indictment charged assault for threatening the victim with a knife and the trial court permitted the jury to convict based on the defendant's use of a champagne

bottle—a weapon not included in the original charge.

22. 850 P.2d 653 (Alaska App.1993).

23. 757 P.2d 601 (Alaska App.1988).

24. *See Cheely*, 850 P.2d at 654.

25. *See id.* at 657.

26. *See id.* at 654.

27. *See id.* at 661.

28. *See id.* at 660.

29. *See Rollins*, 757 P.2d at 602.

30. *See id.*

31. *See id.*

convicted Rollins of the lesser offense.[32] Rollins argued on appeal that he detrimentally relied on the trial court's willingness to omit the lesser-included offense from the jury instructions.[33] The court of appeals agreed and rejected the state's argument that Rollins should have anticipated that the jury would be instructed on the lesser-included offense even after the court's original instructions excluded reference to the charge.[34]

Both Rollins and Cheely claimed that the state presented one theory at trial but that they were convicted on a different theory. And the original indictments in both cases covered both theories. In *Rollins,* as a result of the defendant's justifiable reliance on the state's affirmative actions at trial, the defendant believed the state was no longer pursuing a conviction based on a particular theory. The state took no such affirmative action in *Cheely,* where the crime of theft automatically encompassed numerous theories of guilt and the prosecutor at trial simply emphasized one theory of theft over another.

*Rollins* provides the better analogy to Bowers's case. Here the state's actions created the same justifiable reliance as the state's actions in *Rollins.* The prosecutor here asserted in his opening statement to the jury at the beginning of trial that "we're here today because back on August 7th that man, Mr. Bowers, pointed a gun at Mr. Peacock and pulled the trigger. Fortunately, the gun didn't go off." That statement referred exclusively to the revolver. The prosecutor added that "the state will be asking you to return a verdict of guilty against Mr. Bowers for … placing Mr. Peacock in fear of imminent serious physical injury by pointing *that* gun at him and pulling the trigger, [and] also misconduct involving weapons in the fourth degree for possessing a firearm while he was intoxicated." (Emphasis added.) The prosecutor thus communicated his intention to rely on Bowers's use of one weapon—the revolver—as the basis for conviction on the assault charge.[35]

Events at trial reinforced this apparent intention. The prosecutor asked Peacock about his state of mind when Bowers pointed the revolver at him in the hot tub. Peacock responded that he was "terrified." Peacock then testified that he saw Bowers chamber a round in the rifle. But the prosecutor did not ask about Peacock's state of mind when the rifle was chambered or when it was fired. Although Peacock's testimony suggested that he was still in fear, the prosecutor never asked Peacock whether he was put in fear by Bowers's conduct with the rifle. The failure to pose specific state-of-mind questions to expressly satisfy this necessary element of any assault charge based on conduct with the rifle is significant given the text of the indictment and the state's opening argument.

The state's closing arguments to the jury reaffirmed the state's intention to rely exclusively on the revolver to prove an assault. The prosecutor began his closing argument by asserting that "[t]here's no doubt that on August 7 of this year Timothy Bowers pointed a .44 magnum revolver at Mr. Peacock and pulled the trigger." The prosecutor concluded his opening argument with the statement that "[Peacock] was in the hot tub when Mr. Bowers pointed that gun at him and recklessly faced [sic] him in fear of imminent serious physical injury." These references are to the revolver only, and not the rifle.

The state began its rebuttal argument to the jury by stating that "[Peacock] knows the difference between a click of a camera and a click of a .44 that's being pulled. He was in the hot tub when the gun was pulled but I don't see a picture of him in the hot tub." The state later argued that Peacock had testified that "I was in the hot tub when he pointed the gun at me and pulled the trigger." The state closed by arguing that "[t]here isn't any doubt … [t]hat on August 7th Timothy Bowers stood eight feet from Mr. Peacock and went bang, except it didn't

32. *See id.*

33. *See id.* at 602–03.

34. *See id.*

35. The weapons misconduct charge referred specifically and exclusively to the revolver.

go bang, it went click, fortunately, and then he went and grabbed a .22, a .22 he told the troopers was full and when they found it the next morning was empty. At the same time he had that .44 in his hand he was drunk...."

The prosecutor did refer in argument to Bowers's conduct with the rifle, and to discharging the rifle. But those comments appear to have been made only to corroborate the testimony of the prosecution witnesses and to attack Bowers's credibility and account of events. We think those comments cannot be fairly read as an argument that Bowers assaulted Peacock with the rifle.

We therefore agree with Bowers that the state's conduct justifiably caused him to believe that he was only on trial for committing an assault with the revolver. The state was not simply silent about a second possible theory of the offense. Its opening statement, its evidence, and its arguments affirmatively created a reasonable expectation that the assault charge was based on use of the revolver, not the rifle. We hold that these acts effectively disavowed reliance on the rifle to prove the assault charge. We have no reason to think that the state intended to misdirect Bowers, but its conduct had that effect.

The state argues that its failure at trial to address use of the rifle did not prejudice Bowers's defense. Had the supplemental instruction not been given, we would agree. But after the close of evidence, after all arguments, and after deliberations had begun, the jury was instructed that it could rely on conduct with the rifle to find an assault. The timing of the instruction created a strong likelihood of prejudice.

To show that the error requires reversal, Bowers must establish both how the timing of the instruction created a potential for prejudice and specifically how the instruction prejudiced his defense.[36] Bowers argues that giving the instruction during deliberations prejudiced his defense, because he had no opportunity to defend against the state's alternate theory. Bowers further asserts that if he had been given notice of charges relating to the rifle, he would have changed the focus of his testimony and revised his arguments to the jury to present and emphasize favorable evidence regarding that weapon. There was evidence that the rifle and some spent shell casings were about forty feet from Bowers's cabin, rather than on or near the porch where the hot tub was located; there was also evidence that Peacock had initially told state troopers he had never seen Bowers with a rifle. This evidence supported Bowers's version of events and, if emphasized, could have seriously undermined Peacock's credibility with the jury.

But the state's trial conduct might have led Bowers reasonably to believe that this evidence was relatively unimportant. And Bowers made a reasonable tactical choice not to attempt to rebut a guilt theory that the state was not trying to prove. We assume that there were logical reasons not to challenge the rifle evidence more forcefully, given its seemingly secondary role in the case and given defense counsel's logical disinclination to draw attention to the rifle as a possible basis for an assault conviction. Bowers therefore lost a valuable opportunity to present a defense against any argument that he assaulted Peacock with the rifle. We accordingly conclude that the state's disavowal prejudiced Bowers's ability to defend himself with respect to the rifle.

■ As an alternative basis for affirming Bowers's conviction, the state argues that Bowers engaged in a single course of assaultive conduct using both the revolver and the rifle. In other words, Bowers engaged in two discrete acts comprising a single assault. This might have been a plausible theory.[37] But the trial court's supplemental instruction precluded the jury from considering any such theory. The instruction permitted the jury to find an assault for use of *either* weapon,

---

**36.** *Cf. McGahan v. State,* 606 P.2d 396, 397–98 (Alaska 1980) (addressing required showing for prejudice when indictment is amended).

**37.** *Cf. Mill v. State,* 585 P.2d 546, 551–52 (Alaska 1978) (finding single assault where defendant pointed rifle at victim through cabin window, ordered victim outside, shot victim in leg, and threatened victim with rifle until victim wrote him check).

but did not permit it to find an assault for using both weapons. Further, the state did not try the case as if there had been a single assault. Rather, it distinguished between use of the revolver and use of the rifle. And as we noted above, the prosecutor appeared to use evidence about conduct with the rifle only to bolster the claim that Bowers assaulted Peacock with the revolver. The state therefore disavowed any possibility of treating Bowers's conduct as a unitary assault.

## IV. CONCLUSION

We conclude that it was error to submit the supplemental instruction allowing the jury to find that Bowers assaulted Peacock with the rifle after the close of evidence and after the jury had begun deliberating. We also conclude that this error was prejudicial. Accordingly, we REVERSE Bowers's judgment and conviction and the decision of the court of appeals and REMAND for further proceedings.