OPINION OF THE COURT
Kaye, J.
 In the two cases before us, defendants’ convictions *493 were reversed on the ground that the theory of prosecution at trial changed from that alleged in the indictment. In People v Grega, we conclude that there was in fact no variance between the theory of the indictment and the proof at trial, and we therefore modify the Appellate Division order and reinstate defendant’s convictions. In People v Roberts, however, we conclude that the trial theory of prosecution differed significantly and prejudicially from the allegations of the indictment, and we therefore affirm the Appellate Division order remitting the manslaughter count of the indictment for a new trial.

People v Grega

Defendant Wayne Grega was charged by indictment with rape, sodomy, sexual abuse and unlawful imprisonment. The indictment alleged that the sexual offenses were committed through defendant’s use of forcible compulsion, consisting of the use of physical force (Penal Law § 130.00 [8] [a]). The indictment did not charge defendant with forcible compulsion by express or implied threats which placed the victim in fear of immediate death or physical injury (Penal Law § 130.00 [8] [b]).
At trial, complainant testified that she met defendant when he brought a pair of handcuffs to the locksmith for whom she worked. In response to his call for a date, complainant and defendant met at a bar, and then repaired to his apartment to pass time before a band they were planning to hear was scheduled to begin playing. Complainant testified that she did not object when defendant kissed her, but when it became clear that he intended to press his advances, she asked him to stop and attempted to move away. According to complainant, defendant then pushed her down on a sofa, held her there despite her struggle, tore off her shirt, dragged her into his bedroom, removed the rest of her clothing while keeping her pinned to the bed, handcuffed her and then bound her hands and feet to the bed with duct tape before he raped, sodomized and otherwise sexually abused her. Defendant, on the other hand, testified that complainant consented to and enjoyed all of the foregoing activity, which he now characterizes as the actions of "an ardent swain.”
In defining the element of forcible compulsion with respect to each of the charged sexual offenses, County Court in *494 structed the jury on both statutory definitions — that is, the court instructed the jury that forcible compulsion was established either by proof of compulsion by physical force, or by proof of compulsion by express or implied threats. Defense counsel objected to any charge that the jury could consider express or implied threats, but the court gave no additional instruction on the point.
The jury found defendant guilty on all counts. The Appellate Division majority concluded, however, that the reference in the charge to express or implied threats constituted an impermissible change in the theory of prosecution, and reversible error.

People v Roberts

Defendant Paul Roberts was indicted for manslaughter in the first degree and grand larceny in the second degree, in connection with the death of Blanche Mironov. Upon his arrest, he was charged with felony murder. Defendant waived immunity, and testified in the Grand Jury that, as he was driving the 68-year-old woman home to Mount Vernon from Fallsburg in his taxi, she became disoriented and agitated, and in hysterical rage began screaming and hitting at him from the back seat. Defendant testified that he struck her once with his fist when his taxi began to swerve out of control on the highway, knocking her unconscious. When he realized she might be dead, he claimed that he panicked, drove back to Sullivan County, buried her body and disposed of her belongings. After defendant’s testimony, the Grand Jury voted a manslaughter indictment. The indictment specifically alleged that "defendant, with intent to cause serious physical injury, did strike Blanche Mironov in the neck area causing her death”. The discovery material later provided to defendant also stated that he had "struck” Mironov. While the answers to discovery were subsequently amended, this remained unchanged.
At trial, the prosecutor read defendant’s Grand Jury testimony, as well as earlier and significantly different exculpatory statements he had made to the effect that Mironov had left his cab — alive—in Westchester, and had gotten into a blue van driven by a man and a woman who appeared to be her acquaintances. The key evidence at trial was extensive medical testimony. Both of the People’s expert medical witnesses— the doctor who performed Mironov’s autopsy and the County *495 Coroner — testified that the cause of Mironov’s death was, as the autopsy report stated, "Asphyxia by Traumatic compression of Neck.” This resulted, according to the doctors, from a fracture of Mironov’s hyoid bone, a small bone located, at the base of the tongue. The doctors testified that because the hyoid bone is flexible and sits in a well-protected position, only deliberate strangulation or an unusually accurate and forceful blow, such as a karate chop, could break it; they also opined that it was all but impossible that a single blow with a fist or elbow could have caused both the hyoid bone fracture and the broken nose Mironov sustained. The doctors maintained, over defendant’s objection to this testimony, that it was virtually certain that Mironov’s hyoid bone was not broken by a blow, but fractured when her assailant strangled her. Defendant’s request for a continuance so that he could prepare to rebut this expert testimony was denied.
In summation, the prosecutor argued that the medical evidence proved that Mironov’s death was caused when defendant intentionally strangled her. The jury convicted defendant on both the manslaughter and grand larceny counts. The Appellate Division reversed defendant’s manslaughter conviction, concluding that the People’s trial theory of intentional strangulation was inconsistent with the Grand Jury’s determination that defendant intended only to cause serious physical injury to Mironov when he struck her.[1]
Discussion
Our analysis begins with the State constitutional provision that "[n]o person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury”. (NY Const, art I, § 6; see also, CPL 210.05.) The Constitution further provides that an accused "shall be informed of the nature and cause of the accusation.” (Id.; see also, CPL 200.50.)
An indictment serves three important purposes. "First and foremost, an indictment * * * provid[es] the defendant with fair notice of the accusations against him, so that he will be able to prepare a defense.” (People v Iannone, 45 NY2d 589, 594.) Second, the indictment prevents the prosecutor from *496 usurping the powers of the Grand Jury by ensuring that the crime for which defendant is tried is the same crime for which he was indicted, "rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence”. (Id.; see also, Russell v United States, 369 US 749, 770.) Finally, an indictment prevents later retrials for the same offense in contravention of the constitutional prohibition against double jeopardy (People v Iannone, supra, at 595).
Proof at trial that varies from the indictment potentially compromises two of the functions of the indictment — notice to the accused and the exclusive power of the Grand Jury to determine the charges. Where defendant’s right to fair notice of the charges or his right to have those charges preferred by the Grand Jury rather than by the prosecutor at trial has been violated, reversal is required. In Roberts, such a violation occurred; in Grega, it did not.
In Grega, the proof presented by the People at trial in fact did not vary from the allegations of the indictment. The indictment alleged that defendant had committed the charged sex offenses through the use of physical force, and defendant’s use of physical force was precisely what the complainant described in her testimony. Thus, defendant was not deprived of fair notice of what the People would attempt to prove.
Nor, under the circumstances of this case, was defendant deprived of the right to be tried on the charges determined by the Grand Jury to be appropriate. Had there been evidence from which the trial jury could have concluded that defendant accomplished his crimes through the use of express or implied threats that overcame the complainant’s will, then the court’s instructions — which permitted the jury to consider that uncharged theory — might well have violated defendant’s right to be tried only for crimes with which the Grand Jury had charged him (see, People v Kaminski, 58 NY2d 886). However, there was no such evidence. Since the victim was handcuffed and tied to defendant’s bed, according to her testimony, defendant could not have committed his crimes through the use of implied threats, but only by the physical force he employed to prevent her escape. Defendant’s testimony, similarly, was devoid of evidence of threats, for he testified that the complainant desired and freely consented to his acts. Thus, unlike Kaminski, here the jury’s guilty verdict could only have been based on the evidence of actual physical force as charged in the indictment.
*497 While the trial court should not have charged both statutory definitions of forcible compulsion, but instead should have tailored its instructions to the case before it, on this record we conclude that the additional portion of the charge had no potential for prejudicing defendant, and thus was harmless error (see, People v Smalls, 55 NY2d 407, 416-417). Defendant was in fact tried and convicted of only those crimes and theories charged in the indictment.[2]
By contrast, in Roberts the People’s presentation of proof at trial, which contradicted the factual allegations of the manslaughter count of the indictment as to the cause of death, violated the constitutional and statutory requirements that an indictment provide fair notice in order to permit the preparation of a defense.
The People argue that the method whereby death is caused is not an essential element of the crime of manslaughter. Relying on cases holding that the People do not need to prove allegations in an indictment that are extraneous to the material elements of the offense charged, they contend that they were free to present evidence of the cause of death that varied from the cause stated in the indictment.
It is true that when an indictment alleges facts that are extraneous or immaterial to the charges or beyond what is necessary to support the charges, or when factual allegations are made in the alternative, the People need not prove more than those factual allegations necessary to support a conviction (see, People v Charles, 61 NY2d 321; People v Rooney, 57 NY2d 822). However, that line of authority does not support the quite different proposition now urged by the People — that when the indictment specifies a set of facts supporting a material element of the crime charged, the People at trial are at liberty to present evidence that affirmatively disproves it.
Nor is the contention well founded that the particular factual allegations now in issue — that defendant with intent to cause serious injury struck Mironov, causing her death— were in this case extraneous.
The method employed to bring about death is not an "element” of manslaughter, but the People cannot omit all de *498 scription of defendant’s actions. To the contrary, the Legislature has specified that every indictment must contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, (a) asserts facts supporting every element of the offense charged and the defendant’s or defendants’ commission thereof with sufficient precision to clearly apprise the defendant or defendants of the conduct which is the subject of the accusation”. (CPL 200.50 [7] [a].) While an indictment may not be jurisdictionally deficient for failure to allege such facts (People v Iannone, 45 NY2d 599, supra), at a minimum those facts would have to be provided if requested in a bill of particulars. Thus, though not an element of the crime, a description of the conduct that resulted in the victim’s death cannot be said, under CPL 200.50 (7) (a), to be extraneous to the material elements of the crime, and the People were bound to provide such factual allegations.
Here, the People chose to include the cause of death in the indictment and to repeat that allegation in their answer to discovery.[3] Having specified in the indictment, and later in their answer to discovery, that defendant struck the victim, thereby causing her death, the People were not then free to present proof at trial that virtually ruled out that theory as the cause of death and substituted another one (see, People v Shealy, 51 NY2d 933; People v Barnes, 50 NY2d 375, 379, n 3 [the People are not required to specify in a burglary indictment what crime defendant inténded to commit but, if it is specified, they must prove that crime, not a different one]).
Reliance on People v Spann (56 NY2d 469) is misplaced. In Spann, the defendant himself voluntarily took the stand and admitted that he had stolen property on the date and from the person specified in the indictment, but that the property taken was different from that alleged in the indictment. In that limited situation, where defendant could not complain that he was denied notice, we upheld the trial court’s constructive amendment of the indictment. We emphasized in particular that it was defendant’s own decision to admit the theft of different property that had injected that theory into the trial. (See also, People v Feldman, 50 NY2d 500, 504 [where defendant introduced proof that the sale was made to a *499 different/person than alleged in the indictment].) Here, however, defendant cannot be said to have consented to the jury’s consideration of proof that contradicted the factual allegations of the indictment regarding the cause of death, for his Grand Jury testimony was — in contrast to the defendant’s statement in Spann — entirely consistent with the indictment.
This case differs from Spann and Feldman in another significant respect. In those cases, the proof introduced by the defendants was evidence of the same crime charged in the indictment. Here, while the crime alleged in the indictment was technically the same one for which defendant was tried, it is clear that the strangulation identified at trial by the People’s experts as the cause of death is evidence of murder, the very crime for which the Grand Jury had refused to indict defendant. Indeed, the prosecutor’s summation was devoted to a theory of intentional murder.
The prejudice to defendant resulting from that variance was manifest. Given that the conduct alleged in the indictment was consistent with defendant’s statements and Grand Jury testimony that he had struck the victim as she hit at him from the back seat, defendant at trial was unprepared to meet a case of deliberate strangulation.
The result we reach does not leave the People in an "impossible position,” as they argue. If the evidence before the Grand Jury tended to show that striking or strangulation, or both, was the cause of death, the indictment might have been framed accordingly. If a review of the evidence before the Grand Jury demonstrated that the use of the word "struck” was an error, the prosecutor might have moved, even at trial, upon notice to defendant, to amend the indictment (CPL 200.70; People v Heaton, 59 AD2d 704). If the prosecutor concluded only after obtaining the indictment that the trial evidence would conclusively demonstrate deliberate strangulation, a superseding indictment might have been appropriate (CPL 200.80). What is not permissible, however, is for the People to proceed as they did in this case — that is, simply to await trial to present evidence that proved a significantly different cause of death than that alleged in the indictment.
Nor does the result we reach reward "gamesmanship,” as the dissent asserts (dissenting opn, at 503, 504). The autopsy reported "Asphyxia by Traumatic compression of Neck” as the cause of death, which was consistent with compression caused by a heavy blow, and consistent with the indictment, the *500 answers to discovery and the defense of justification. Defendant was surely entitled to rely on this record in preparing his defense. The evidence he encountered at trial — largely testimony of the People’s own expert medical witnesses that deliberate strangulation was the cause of death — left as his only chance of success cross-examination of this evidence or production of his own expert; however, his request for a continuance to do so was denied. On this record we cannot credit the assertion that defendant craftily chose to forego his defense in favor of the prospect of reversal and a new trial on appeal.
Having concluded that the "fair notice” purpose of the indictment was not satisfied here, we need not additionally consider the indictment’s independent purpose of preventing the prosecutor from usurping the exclusive powers of the Grand Jury.
Accordingly, in People v Grega, the order should be modified by reinstating the convictions reversed by the Appellate Division and the case remitted to the Appellate Division, Third Department, for consideration of the facts as to the reinstated convictions and, as so modified, affirmed. In People v Roberts, the order of the Appellate Division should be affirmed.

. While defendant urges, as a separate ground for affirmance, that the court erroneously refused his request to charge justification (Penal Law § 35.15), we need not and do not reach this issue.

. On his cross appeal, defendant asserts that the merger doctrine requires that his conviction for unlawful imprisonment be set aside. Inasmuch as defendant’s general motions for a trial order of dismissal failed to make any reference to this theory, defendant’s claim is unpreserved (People v Bynum, 70 NY2d 858).

. As defense counsel pointed out to the trial court, he made no request for a bill of particulars because the indictment itself was so particularized; it did not need to be, but it was.