OPINION OF THE COURT
Barbara F. Newman, J.
Defendants are charged with one count of grand larceny in the second degree under section 155.40 (1) of the Penal Law and 13 counts of offering a false document for filing under section 175.35 of the Penal Law, in connection with an alleged scheme related to Medicaid claims, “from on or about January 1, 1998, to on or about February 28, 2002.[1] In the instant application, defendants move for an order precluding the People “from constructively amending the indictment.” (Defendants’ notice of motion.)
For the following reasons, defendants’ motion is denied.
Procedural and Factual Background
So far as is relevant to the court’s determination of the instant motion, the first count of the indictment, by which defendants are charged with grand larceny in the second degree, alleges:
“The defendant ABU KABIR, individually, and as high managerial agent of defendant BATHGATE PRESCRIPTION CENTER, INC., . . . with intent to deprive another of property and to appropriate the same to himself, defendant BATHGATE PRESCRIPTION CENTER, INC., and third persons, wrongfully took, obtained and withheld such property, valued in excess of $50,000, from an owner thereof, as follows:
“The defendant ABU KABIR submitted and caused to be submitted to Computer Sciences Corporation, fiscal agent of the State of New York, in the name and in behalf of defendant BATHGATE PRESCRIPTION CENTER, INC., a pharmacy provider under *1063 the New York State Medical Assistance (Medicaid) Program, electronic invoices which constituted claims under the Medicaid Program, which falsely stated that the amounts listed were due and that prescription refills had been dispensed to Medicaid recipients in accordance with the authorization of the prescribing doctor and in compliance with applicable federal and state laws and regulations, when, as defendants knew, they had not been so dispensed and the amounts listed were not due.”
By decision and order dated November 2, 2005 (hereinafter the 11/2 decision), this court denied the motion of defendant Abu Kabir for an order compelling the People to file a bill of particulars to supplement the bill of particulars which the People had previously included in a letter to Kabir’s attorney. In support of that motion, Kabir’s attorney had alleged, inter alia, that the language of the first count of the indictment was ambiguous as to whether the People were claiming that defendants’ conduct was unlawful because the medication refills for which defendants had billed Medicaid were not dispensed to recipients, or because those refills had not been authorized by the prescribing physicians, whether or not the medications had actually been dispensed to recipients being immaterial.
In their response to Kabir’s motion to compel the filing of a bill of particulars, the People alleged, inter alia:
“With respect to the further request by Kabir concerning the theory of the indictment and the type of proof to be offered by the People at trial, it appears that Kabir is misreading the indictment. The People intend to prove that the increases in the number of refills were not authorized by the particular physician and therefore the billings for those claims were fraudulent, as opposed to proving that the medications were not dispensed to the recipient. Although the People believe that the indictment already so states, this should provide whatever clarification is needed.” (People’s undated response to Abu Kabir’s request for a bill of particulars at 2-3.)
Thus, at least as to that particular request, the People’s response to Kabir’s motion, being “a written statement by the prosecutor,” also constituted a de facto bill of particulars pertaining to the offense charged in the first count of the indictment. (See CPL 200.95 [1]; see also 11/2 decision at 2 n 1 *1064 [“Therefore, the propriety of this particular request. . ., which essentially seeks an accounting of the particular theory of fraud which the People intend to prove at trial. . ., is no longer in issue”].)
On July 12, 2006, following their review and analysis of materials with which they had been provided during the discovery process, defendants’ attorneys met with counsel for the People outside of the court’s presence. At that meeting, it has been reported to the court by the parties, defense counsel protested that the materials — which included data gleaned from Medicaid’s computer records concerning electronic billings allegedly submitted by defendants and copies of actual prescriptions — established that a significant number of the refills which the People originally alleged had not been authorized by the prescribing physicians had in fact been authorized by the prescribing physicians. Thereafter, the People conducted their own review and analysis of the materials in question. They then advised defendants and the court that the People concurred in part with some of defense counsel’s contentions at the meeting and that a number of refills which the People had previously alleged were not authorized were in fact authorized.[2]
The People further advised the defense and the court that their review of the materials revealed that some of the prescriptions they examined were not written by the doctor whose signature they bore and that the People intend to prove at trial that Kabir forged them. In other words, evidence of the forgeries of prescriptions by Kabir and of defendants’ submission to Medicaid of invoices for reimbursement for refills of these same prescriptions, which defendants knew to be forged, would now be part of the proof of defendants’ guilt of count one of the indictment.
Discussion
On the instant motion, defendants argue that a theory of prosecution that they committed the crime of grand larceny by billing Medicaid for refills which were authorized by a forged prescription form which form was itself forged by Kabir is a *1065 theory different from one that they committed the same crime by billing Medicaid for refills which were dispensed in numbers above the maximum number of refills actually authorized by the prescribing physician. Defendants also contend that the language which the People used in the de facto bill of particulars to describe the substance of the conduct encompassed by the grand larceny charge, and upon which language the defense relied, provided defendants with notice of the latter theory of prosecution but not the former. Therefore, defendants argue, the People’s proposal to prove at trial that defendants billed Medicaid for refills of forged original prescriptions which Kabir had forged would constitute an improper constructive amendment of the indictment in violation of their constitutional rights to fair notice of the charges preferred by the grand jury, and that therefore the People should be precluded from presenting such proof. In opposition, the People argue that while their stated intent to proffer evidence of the transactions involving forged prescriptions is a different method of proof of the crime charged than that which they intend to use for other transactions, it is not a different theory of prosecution. Therefore, the People contend, the admission of such evidence is not a constructive amendment of the indictment.
Under the New York State Constitution, a defendant charged with a felony has a right to indictment by a grand jury. (NY Const, art I, § 6.) In People v Grega (72 NY2d 489 [1988]), the Court of Appeals listed the “three important purposes” which an indictment serves:
“ ‘First and foremost, an indictment . . . provid[es] the defendant with fair notice of the accusations against him, so that he will be able to prepare a defense.’ (People v Iannone, 45 NY2d 589, 594.) Second, the indictment prevents the prosecutor from usurping the powers of the Grand Jury by ensuring that the crime for which defendant is tried is the same crime for which he was indicted, ‘rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence’. (Id.) Finally, an indictment prevents later retrials for the same offense in contravention of the constitutional prohibition against double jeopardy.
“Proof at trial that varies from the indictment potentially compromises [the first and second of those purposes and violates a] defendant’s right to fair notice of the charges [and] his right to have *1066 those charges preferred by the Grand Jury rather than by the prosecutor at trial” (72 NY2d at 495-496 [citations omitted]).
Further, “[t]he function of a bill of particulars is to ‘define more specifically the crime . . . charged in the indictment, or, in other words, to provide clarification’ by furnishing information as to the substance of the factual allegations” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 200.95, at 539), and thereby contribute to the fulfillment of the indictment’s purposes. (See People v Davis, 41 NY2d 678, 679-680 [1977], quoting Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL former 200.90, at 292 [1971 ed]; People v Elliot, 299 AD2d 731, 732 [3d Dept 2002] [“The sole function of a bill of particulars is to clarify a pleading, in this instance, the indictment”].) Thus, where, as here, the People have provided a bill of particulars, they may not present “proof at trial [that] contradicts the allegations contained in the indictment and the bill of particulars^ nor are] ‘the People . . . at liberty to present evidence that affirmatively disproves . . . [a set of facts]’ ” specified therein. (LanFranco v Murray, 313 F3d 112, 119 [2d Cir 2002] [emphasis added], quoting from and explaining Grega; see also People v Galenski, 184 AD2d 1006, 1006 [4th Dept 1992] [explaining that reversal was required in Roberts (decided with Grega) because proof at trial “contradicted and disproved the factual allegations ... in the indictment”].)
The evidence which the People now propose to present in the instant case, however, poses no such risk. Proof that defendants billed Medicaid for refills based upon forged original prescription forms which defendants knew had been forged would neither contradict nor affirmatively disprove the allegations and set of facts delineated in the indictment and the de facto bill of particulars — that “defendants knew . . . that prescription refills had been dispensed . . . with [out] the authorization of the prescribing doctor” (indictment), and “that the increases in the number of refills were not authorized by the particular [prescribing] physician” (de facto bill of particulars) — such as, for example, proof “that the medications were not dispensed to the recipient” (id.) might. (See, e.g., People v Wideman, 195 AD2d 582, 582-583 [2d Dept 1993] [“The allegation in the . . . amended bill of particulars that the defendant’s acts caused the officer substantial head and shoulder pain did not preclude the People from proving that the defendant struck and damaged the officer’s eye”]; and compare with People v Orso, 270 AD2d 947, *1067 948 [4th Dept 2000] [where indictment charged that “owner of the house” was robbed by threatened use of a hammer, evidence that owner’s son was threatened with hammer should have been precluded since such evidence “affirmatively disproved” that the owner was threatened].)
Moreover, the stated intent of the People to present such proof does not foretell a theory of prosecution different from that which is apparent from a fair reading of the indictment and the de facto bill of particulars. To be sure, the language used in the first count of the indictment itself was arguably ambiguous as to the unauthorized refills versus the nondispensation of medications. Indeed, that was precisely the issue Kabir raised in his motion to compel the People to file a supplemental bill of particulars. However, the People’s response to that motion not only dispelled the ambiguity of which Kabir had complained, it also made clear that the theory of prosecution was that defendants had billed Medicaid for refills and received payment therefor based upon defendants’ fraudulent representations that such refills had been authorized by the prescribing physicians. (See, supra, Procedural and Factual Background.)
Whether the People intend to prove that a particular refill was not authorized because the original prescription was invalid due to forgery of which defendants were aware, or was not authorized because defendants altered or ignored the maximum number of refills authorized on an otherwise valid original prescription, their theory of prosecution is the same: the physician by whom the subject refill was purportedly authorized did not in fact authorize it. (See, e.g., People v Osinowo, 28 AD3d 1011 [3d Dept 2006] [People’s proof at trial that either defendant or codefendant, but not specifically which of two, possessed gun was not change in theory of prosecution where indictment charged that defendant possessed gun]; People v Medina, 233 AD2d 927, 927 [4th Dept 1996] [where indictment alleged that child’s death was caused by “repeatedly shaking . . . and/or impacting his head on an object,” amended bill of particulars which stated that defendant “repeatedly shook” child did not change or limit theory of prosecution so that evidence of defendant’s admission that child’s head struck a wall while defendant was shaking him was properly admitted at trial].) Since this theory is both consistent with the evidence which was presented to and considered by the grand jury and apparent from the language of the indictment as clarified by the de facto bill of particulars, the presentation of proof in support thereof at trial *1068 would, not constitute constructive amendment. (See People v Fronjian, 22 AD3d 244, 245 [1st Dept 2005].)
Nor was there any violation of defendants’ constitutional rights due to the timing of the People’s disclosure of their intent to present evidence of the forgeries in support of this theory. “[T]he state should not be denied all flexibility to continue its investigation and develop further relevant proof after the indictment” (LanFranco v Murray, 313 F3d at 119), and the People gave defendants notice of their intent in advance of trial and almost immediately after the proof was developed in the investigation which, in fact, was launched at the request of defense counsel.[3] The timing of disclosure has not caused defendants any prejudice such as would require preclusion. (See People v Wieber, 202 AD2d 789, 793 [3d Dept 1994].)[4]
Finally, defendants’ protests to the contrary notwithstanding, the People’s stated intent to proffer evidence on their direct case that Kabir personally forged prescriptions which were purportedly written by one of the physicians, as opposed to proffering evidence simply that that physician did not write those prescriptions, does not raise an issue of constitutional dimension. Indeed, far from contradicting or affirmatively disproving the accusatory allegations contained in the indictment and de facto bill of particulars, such evidence would directly support the theory of prosecution, i.e., the physician whose name appears on the questioned prescriptions could not in fact have authorized refills of those prescriptions because it was Kabir, and not the physician, who had completed and signed the original prescription forms on which the refill authorizations appear. Rather, the possibility that the People will attempt to prove at trial that Kabir committed these uncharged crimes in addition to those crimes with which he is charged raises an evidentiary issue (see People v Bayne, 82 NY2d 673, 676 [1993] [in prosecution for grand larceny and forgery, “evidence of the *1069 146 uncharged forged checks . . . did not amend or add to the charges in the indictment . . . , but rather served only as evidentiary support for the larceny count”]; People v Evans, 199 AD2d 191, 192 [1st Dept 1993] [in Medicaid fraud prosecution against provider of diagnostic services, “evidence of alleged additional (uncharged) crimes, including . . . processing and being paid for referrals bearing forged physicians’ signatures, . . . was merely further evidence of a crime for which she was charged: conspiracy to commit second degree grand larceny”]), the resolution of which evidentiary issue is dependent upon factors different from those which were considered in the analysis of the constitutional issues, supra (see People v Ventimiglia, 52 NY2d 350, 359-360 [1981]).
Accordingly, for all of the foregoing reasons, because the prosecution’s intent to present proof of the allegedly forged prescriptions would not constitute a constructive amendment of the indictment, defendants’ motion to preclude the People from constructively amending the indictment is denied.

. Three of the original 16 counts of offering a false document for filing were dismissed by decision and order of Honorable Phylis Skloot Bamberger, dated June 20, 2005.

. The People continued to and still maintain that they will be able to prove a number of transactions in which defendants had billed for refills in excess of those authorized, which transactions would be cumulatively sufficient to satisfy the monetary threshold of the crime charged in the first count of the indictment, including some instances in which the original prescription forms had allegedly been altered by changing the number of refills authorized by the physician to a greater number.

. There is no assertion that the timing of the disclosure is the product of prosecutorial misconduct.

. Defendants’ complaint that they have been prejudiced because they were not given notice until “the very eve of trial” is unpersuasive. Notice was given when the alleged forgeries were uncovered, which was within a few weeks of the proposed date which this court had set for the start of trial. Defendants contend that the additional discovery materials related to the allegedly forged prescriptions are voluminous, complex and confusing. However, the court has cancelled the months-old, previously selected trial date to permit full discovery and investigation by defendants. No trial date will be set until defendants have had a reasonable opportunity to review and analyze the new materials.