■ The People of the State of New York, Respondent, v Victor Colletti, Appellant. [901 NYS2d 684]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Cooperman, J.), rendered October 15, 2008, convicting him of enterprise corruption, promoting gambling in the first degree (eight counts), and conspiracy in the fifth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The defendant's contention that the evidence was legally insufficient to support his conviction of enterprise corruption is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Hawkins*, 11 NY3d 484, 491-492 [2008]; *People v Gray*, 86 NY2d 10, 19 [1995]; *People v Muriel-Herrera*, 68 AD3d 1135, 1136 [2009]; *People v Sampson*, 67 AD3d 1031 [2009]). In any event, the contention is without merit. Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the statutory elements of enterprise corruption, as charged by the Supreme Court, beyond a reasonable doubt (*see* Penal Law § 460.20).

Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

Nevertheless, we agree with the defendant that reversal is warranted because the Supreme Court's jury instructions constructively amended the indictment to permit the defendant's conviction for participation in a criminal enterprise other than the enterprise identified and alleged by the grand jury in the indictment. The indictment specifically alleged, inter alia, that the defendant oversaw an ongoing illegal gambling operation, "to wit, the Genovese-Bonanno Gambling Organization." The lengthy indictment also contained numerous references to "the Genovese-Bonanno Gambling Organization" and detailed the alleged involvement of the defendant and his codefendants in the Genovese and Bonanno organized crime families and their roles in this particular gambling operation. Consistent with the indictment, the prosecutor focused on the task of tying the defendant to "the Genovese-Bonnano Gambling Organization," and his opening statement and summation were replete

with organized crime references. Significantly, none of the fact witnesses or wiretap evidence, which clearly demonstrated the defendant's involvement in illegal gambling, mentioned "the Genovese-Bonanno Gambling Operation" or organized crime in general. Indeed, during his questioning of one witness, the prosecutor even referred to "Victor Colletti's gambling organization," "Mr. Colletti's gambling business," and "Victor Colletti's gambling enterprise." The prosecution also produced a police investigator who testified as an expert witness regarding the structure, heirarchy, and activities of the "Cosa Nostra" and its constituent organized crime families, and who stated, inter alia, that the defendant was a "soldier" in the Genovese crime family. The expert's testimony was the only evidence presented by the prosecution to establish a relationship between the defendant and organized crime.

At the close of evidence, the defendant's counsel requested that the trial court instruct the jury that the defendant could not be convicted of enterprise corruption unless it found that the defendant carried on his criminal activities for "the Genovese-Bonanno Gambling Organization" as the enterprise identified in the indictment and repeatedly referenced by the prosecutor and the expert witness. Counsel maintained that in the absence of such an instruction, the pervasive references to organized crime throughout the trial were improper. The Supreme Court denied the request. After reading to the jury the entire indictment, replete with organized crime references, the Supreme Court charged the statutory definition of "criminal enterprise" (see Penal Law § 460.10 [3]), advising the jury that it could convict the defendant merely if it found, inter alia, that he was associated with and participated in the affairs of "a criminal enterprise." The defendant contends that by instructing the jury that it only needed to find the existence of a generic criminal enterprise, the Supreme Court impermissibly broadened the basis for a conviction beyond that specifically alleged in the indictment. We agree.

Like the federal constitution, the language of our state constitution provides that no person shall be held to answer for a capital or otherwise infamous crime unless upon indictment of a grand jury (see US Const Amend V; NY Const, art I, § 6). "The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away" (Stirone v United States, 361 US 212, 218-219 [1960]), and "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself" (id. at 215-216). The decision in United States v Weissman (899

F2d 1111 [1990]) constitutes persuasive authority for reversal herein. In *Weissman,* the defendants were charged in the indictment with conspiracy offenses under the Racketeer Influenced and Corrupt Organizations Act (see 18 USC 1962; hereinafter RICO) based on allegations, inter alia, that they conspired to commit criminal acts "while employed by or associated with an enterprise, to wit, a group of individuals associated in fact known as the DeCavalcante Family of La Cosa Nostra" (899 F2d at 1112). Similar to the instant case, the indictment contained extensive references to organized crime, as did the prosecution's evidence and the government's opening and closing statements. However, in response to an inquiry from the jury, the trial court gave a supplemental charge which instructed the jurors that they did not have to find that the enterprise in that case was the DeCavalcante crime family, but that they could convict upon finding the defendants' requisite involvement in any enterprise that fit the general statutory definition. The Eleventh Circuit Court of Appeals determined that in giving this instruction, the trial court "constructively amended the indictment and committed reversible error" (*id.* at 1115) because the charge allowed the jury "to convict [the defendants] of a RICO conspiracy other than the one detailed by the grand jury in the indictment" (*id.* at 1114). The decision further noted that the government could have avoided the problem by employing the general language in the statute to refer to the enterprise in the indictment, but that once it chose to specify the enterprise as the DeCavalcante crime family, and to present evidence and arguments to that effect at trial, the trial court was bound to charge that the jury was required to find the same enterprise identified by the grand jury in order to convict. Specifically, the court in *Weissman* observed in relevant part as follows: "The government in styling the indictment could have used the general language of the statute to refer to the enterprise in which appellants allegedly were involved. Indeed, following this opinion, the government may well summon another grand jury and reindict appellants for conspiring to violate RICO in collusion with a more generally described enterprise. In the case before us, however, the government chose to specify that appellants were 'associated with an enterprise, to wit, a group of individuals associated in fact known as the DeCavalcante Family of La Cosa Nostra.' [Accordingly,] [t]he trial court, upon receiving the jury's inquiry, should have informed the jury that the enterprise in this case, in conformity with charges brought in this indictment, was synonymous with the DeCavalcante family" (*id.* at 1115).

Since the circumstances in the case before us are strikingly

similar to those in *Weissman,* we conclude that reversal herein is similarly appropriate (*see also United States v Narog,* 372 F3d 1243 [2004] [where indictment charged that the defendants possessed and distributed material with the knowledge that it would be used "to manufacture a controlled substance, that is, methamphetamine" (*id.* at 1246), the court could not constructively amend the indictment by instructing that the evidence need only prove knowledge of use of the material to manufacture "some controlled substance" (*id.* at 1247), since the instruction "constructively broadened the possible bases for the conviction" (*id.* at 1248)]; *United States v Leichtnam,* 948 F2d 370, 375 [1991] [where indictment charged firearms offense based on possession of a specific type of rifle, and the jury was made aware that other guns were found at the defendant's premises, the court could not merely instruct the jury that a conviction could be based on possession of "a firearm"]; *Howard v Dagget,* 526 F2d 1388 [1975] [where indictment charged the defendant with inducing two named women to engage in prostitution, and information regarding additional women came to light at trial, court could not simply instruct jury as to general statutory elements of offense without specifying the two women identified in the indictment]; *People v Grega,* 72 NY2d 489, 498 [1988] ["the People are not required to specify in a burglary indictment what crime defendant intended to commit but, if it is specified, they must prove that crime, not a different one"]).

The People attempt to distinguish the foregoing decisions by arguing that in the instant case, there was no indication that any criminal enterprise other than "the Genovese-Bonanno Gambling Organization" existed and, therefore, there was no possibility that the jury could have based its conviction of the defendant upon such an alternate enterprise (*see generally People v Grega,* 72 NY2d 489 [1988]). However, assuming that such an alternate basis for conviction must have been affirmatively presented in the case (*but see United States v Narog,* 372 F3d at 1249; *United States v Weissman,* 899 F2d 1111 [1990]), we disagree with the People's contention given the repeated references to "Victor Colletti's gambling enterprise" during the direct examination of a prosecution witness. Likewise, we find unpersuasive the People's argument that the lengthy and detailed references in the indictment to "the Genovese-Bonanno Gambling Organization" constituted mere "surplusage" similar to the brief descriptive language discussed in *United States v Rosenthal* (9 F3d 1016, 1020 [1993]).

Moreover, since the various offenses of which the defendant was convicted are factually intertwined with each other, and the

references to organized crime and to the activities of various crime families pervade the record, reversal and a new trial as to all of the counts is appropriate.

Although the defendant's current challenge to the propriety of the police expert's testimony has not been preserved for appellate review (*see* CPL 470.05 [2]), we take this opportunity to note that, upon retrial, any expert testimony regarding the commission of specific crimes or the defendant's involvement in organized crime must comport with the principles set forth in *Crawford v Washington* (541 US 36 [2004]) and its progeny (*see e.g. United States v Mejia,* 545 F3d 179 [2008]; *People v Goldstein,* 6 NY3d 119 [2005], *cert denied* 547 US 1159 [2006]). Moreover, to the extent that our decision in *People v Barone* (221 AD2d 553 [1995]) may be interpreted as being inconsistent with *Crawford v Washington* (541 US 36 [2004]), it should no longer be followed. Prudenti, P.J., Mastro, Florio and Austin, JJ., concur.