■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OMAN GUTIERREZ, Appellant. [14 NYS3d 336]—

Judgment, Supreme Court, New York County (Gregory Carro, J.), rendered December 14, 2010, as amended March 8, 2011, convicting defendant, after a jury trial, of murder in the first and second degrees, conspiracy in the second degree, and criminal possession of a weapon in the second and third degrees, and sentencing him to an aggregate term of 52½ years to life, unanimously affirmed.

Defendant is accused of orchestrating a conspiracy in which

he hired his trusted friend, codefendant Jose Inoa, to return from Georgia to murder Edward Contreras, a rival drug dealer who had taken over defendant's territory after defendant and several of his associates were imprisoned. Contreras was shot and killed on January 11, 2005, and one of his associates was wounded.

Defendant and Inoa were tried together in June and July 2010. Inoa was convicted of murder in the first and second degrees, attempted murder in the second degree, conspiracy in the second degree, assault in the first degree, and criminal possession of a weapon in the second and third degrees. His conviction was recently affirmed by the Court of Appeals (*see People v Inoa*, 25 NY3d 466 [2015]).

The court properly received evidence that the conspiracy to commit murder was intended to eliminate a rival drug dealer, Contreras, and thus to regain control of drug trafficking in a particular area. There was no variance between the murder conspiracy charged in the indictment and the one proved at trial (*see People v Grega*, 72 NY2d 489, 496 [1988]). There was no need for a multiple conspiracies charge, because the evidence clearly established a single conspiracy to kill a particular victim (*see People v Alfonso*, 35 AD3d 269 [1st Dept 2006], *lv denied* 8 NY3d 878 [2007]). It was clear from the court's charge that the People were required to prove a murder conspiracy, and the jury could not have been misled to believe that a drug conspiracy would serve as a basis for conviction.

Although the Court of Appeals determined in *People v Inoa* (25 NY3d 466 [2015]), that considerable portions of Detective Rivera's testimony as an expert in decoding phone conversations were admitted in error, here, as in *Inoa,* the proof of defendant's commission of the charged crimes was overwhelming and we perceive no significant probability that, but for the error, the verdict would have been less adverse (*see People v Crimmins*, 36 NY2d 230 [1975]).

Among other evidence, Eldia Duran, another participant in the alleged conspiracy, testified that in April 2004, defendant began speaking to her about murdering Contreras and that in December 2004 and January 2005, following defendant's commencement of work release, she was present for several more conversations during which defendant and his associates discussed having Inoa commit the murder. She also testified as to her understanding of the recorded phone calls defendant made to her from prison, and recounted that prior to the murder defendant and Randy Gutierrez discussed that Inoa would be paid for committing the murder as soon as defendant "ha[d]

money." Particularly, she testified that Orlando Torres, Contreras's partner, had offered defendant $20,000 to "invest," and in turn, defendant was going to give $10,000 of that to Inoa for killing Contreras.

Duran recounted that when Inoa arrived in New York City, defendant insisted on keeping him secluded and that, in preparation for the murder, Inoa and members of defendant's crew surveilled Contreras to determine the best place to commit the crime. She also testified that defendant was displeased with the progress of the plan and that during a telephone conversation between defendant and Inoa on January 9, 2005, days before the murder, Inoa reassured defendant that he would get the job done. Duran further testified that, after the shooting, defendant wanted Inoa to stay in Georgia (where he had returned), but that Inoa had threatened to come to New York to get his money directly from Torres. In ensuing telephone conversations, defendant unsuccessfully attempted to convince Inoa to remain in Georgia. In May 2005, after Inoa had been shot in New York City, defendant advised him during a recorded conversation that he was about to receive "ten," that his brother would give Inoa "five" of that, and that the balance would be paid after Inoa returned to Georgia.

As the Court of Appeals observed in *People v Inoa,* "Ms. Duran's testimony, that it was understood that defendant would be paid for carrying off the assassination, was powerfully confirmed by the manifest content of the taped conversations. Detective Rivera's imprimatur was entirely dispensable to the already overdetermined conclusion that the substantial sum earmarked for and expressly promised [Inoa] by his incarcerated co-defendant [Oman Gutierrez], could have been referable only to his murder of Contreras" (25 NY3d at 476).

We have considered defendant's other arguments and find them unavailing. Concur—Friedman, J.P., Andrias, Moskowitz, DeGrasse and Richter, JJ.