People v Knapp (2023 NY Slip Op 05168)

People v Knapp

2023 NY Slip Op 05168

Decided on October 12, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 12, 2023

113217
[*1]The People of the State of New York, Respondent,
v
Bryan C. Knapp, Appellant.

Calendar Date:August 17, 2023

Before:Egan Jr., Clark, Ceresia and McShan, JJ.; Garry, P.J., vouched in.

O'Connell & Aronowitz, Albany (Stephen R. Coffey of counsel), for appellant.
Michael J. Poulin, District Attorney, Johnstown (Kathleen M. Hofmann of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the County Court of Fulton County (Traci DiMezza, J.), rendered October 20, 2021, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree, coercion in the first degree and endangering the welfare of a child.
In June 2019, a 13-year-old female (hereafter the victim) called 911 to report that defendant, her mother's 31-year-old live-in boyfriend, had been repeatedly sending her text messages demanding to see her breasts and vagina and threatened to "drill a hole" through her cell phone if she refused. Following his demands, the victim had displayed her breasts to defendant on several occasions while standing in front of a hole that he had drilled through her bedroom wall. The victim also later reported that defendant had touched her vagina on one occasion in 2017. Defendant was ultimately charged by indictment with sexual abuse in the first degree, coercion in the first degree and endangering the welfare of a child. Following a jury trial, he was convicted on all counts and was sentenced to a prison term of 3½ years followed by 10 years of postrelease supervision on the sexual abuse count, and lesser concurrent terms on the remaining counts. Defendant appeals.
Defendant argues that the evidence adduced at trial is legally insufficient to establish his guilt of coercion in the first degree. To that end, defendant contends that the evidence failed to establish that the victim was induced by him to provide explicit photographs of herself, as was specifically alleged in the indictment. The People, in turn, assert that their theory of the case was merely that defendant compelled the victim to expose herself to him, and that the manner in which she did so was immaterial. As a result, according to the People, the trial evidence demonstrating that the victim was compelled by defendant to display herself through the hole in the bedroom wall was sufficient to support the charge.
Initially, "[a] person is guilty of coercion in the first degree when he or she commits the crime of coercion in the third degree, and . . . [h]e or she commits such crime by instilling in the victim a fear that he or she will cause physical injury to a person or cause damage to property" (Penal Law § 135.65 [1]). As for coercion in the third degree, a person is guilty of this crime "when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in . . . by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will . . . [c]ause physical injury to a person[ ] or . . . [c]ause damage to property" (Penal Law § 135.60 [1], [2]).[FN1]
It is well established that "the prosecution need not prove allegations in an indictment that are extraneous to the material elements of the offense charged" (People v Charles, 61 NY2d 321, 327 [1984]; see People v Rooney, 57 NY2d 822, 823 [1982]). "However, that line of authority does not support [*2]the quite different proposition now urged by the People — that when the indictment specifies a set of facts supporting a material element of the crime charged, the People at trial are at liberty to present evidence that affirmatively disproves it" (People v Grega, 72 NY2d 489, 497 [1988]; see People v Orso, 270 AD2d 947, 948 [4th Dept 2000], lv denied 95 NY2d 856 [2000]). Notably, the Legislature has required that every indictment contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, . . . asserts facts supporting every element of the offense charged and the defendant's . . . commission thereof with sufficient precision to clearly apprise the defendant . . . of the conduct which is the subject of the accusation" (CPL 200.50 [7] [a]). Therefore, a description of a defendant's alleged criminal conduct "cannot be said, under CPL 200.50 (7) (a), to be extraneous to the material elements of the crime" and, having provided such a description as required by statute, the People are "not then free to present proof at trial that virtually rule[s] out that theory . . . and substitute[s] another one" (People v Grega, 72 NY2d at 498; see People v Gachelin, 237 AD2d 300, 301 [2d Dept 1997]).
The only factual allegation contained in the indictment in support of the element of compelling or inducing the victim to engage in conduct from which she had a right to abstain was that defendant induced the victim to provide explicit photographs of herself. This allegation cannot be characterized as extraneous and the People were required to prove it at trial (see People v Barnes, 50 NY2d 375, 379 n 3 [1980]; People v Vandermuelen, 42 AD3d 667, 669 [3d Dept 2007], lv denied 9 NY3d 965 [2007]; People v Orso, 270 AD2d at 948). Said another way, the People were not at liberty to disregard the only description of defendant's criminal conduct that they had pleaded and instead seek to prove an alternative theory (see People v Grega, 72 NY2d at 498). By the victim's own trial testimony, although she did display her breasts to defendant via the hole in the wall on multiple occasions, she never provided him with any photographs. Indeed, there was no evidence of any kind indicating that the victim furnished defendant with photographs of herself. Accordingly, the evidence in support of this charge is legally insufficient. Under these particular circumstances, and recognizing that the jury was never made aware of or considered the allegation set forth in the indictment, dismissal of this charge is warranted (see People v Orso, 270 AD2d at 948).
In light of our conclusion, defendant's contention that County Court erred in declining to charge the jury with certain lesser included offenses of coercion in the first degree has been rendered moot. The same is true with respect to defendant's assertion that he was improperly prevented from reading the indictment to the jury during his opening statement and closing argument. That [*3]is, as limited by his appellate brief, the only particular claim articulated by defendant concerning this issue is that he should have been allowed to highlight for the jury the discrepancy between the allegation listed in the indictment relative to the coercion count and the proof expected to be presented or actually presented at trial, which is the very basis upon which that count has now been dismissed. Defendant has advanced no specific argument pertaining to the remaining counts. In view of these circumstances, any further consideration of this issue as it would pertain to the other counts would amount to nothing more than an academic exercise. In any event, even assuming that, in arguing that he was improperly prevented from reading the indictment, defendant had focused his attention on counts 1 and 3, we need only note the following. With respect to count 1, charging sexual abuse in the first degree, the indictment simply tracked and recited the relevant statutory elements of that crime, and County Court expressly advised defense counsel during his opening statement that he could indeed inform the jury of those particular elements as well as the date and location of the alleged crime — which would have amounted to the functional equivalent of reading the indictment and which defense counsel chose not to do. As for count 3, charging endangering the welfare of a child, defense counsel, during his closing argument, explicitly conceded to the jury that defendant is guilty and should be convicted of this crime.
Garry, P.J., Clark and McShan, JJ., concur.
Egan Jr., J. (concurring in part and dissenting in part).
I agree with the majority that the coercion in the first degree conviction was not supported by legally sufficient evidence. I do not agree, however, that the dismissal of that count renders academic defendant's further challenge to the refusal of County Court to permit defense counsel to read the indictment to the jury during his opening statement and in summation. Because I believe that County Court's refusal to allow defense counsel to do so deprived defendant of a fair trial by interfering with his right to present a defense, I am of the opinion that a new trial is required on the remaining counts against him.
An indictment is "a written accusation by a grand jury . . . which charges one or more defendants with the commission of one or more offenses, at least one of which is a crime, and which serves as a basis for prosecution thereof" (CPL 1.20 [3]). "The three primary functions of the indictment are (1) to provide 'the defendant with fair notice of the accusations made against him [or her], so that he [or she] will be able to prepare a defense,' (2) to 'provide some means of ensuring that the crime for which the defendant is brought to trial is in fact one for which he [or she] was indicted by the [g]rand [j]ury, rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence' and (3) to [*4]indicate 'just what crime or crimes [the] defendant has been tried for, in order to avoid subsequent attempts to retry him [or her] for the same crime or crimes' " (People v Rivera, 84 NY2d 766, 769 [1995], quoting People v Iannone, 45 NY2d 589, 594 [1978]; see People v Saenger, 39 NY3d 433, 438 [2023]; People v Grega, 72 NY2d 489, 495-496 [1988]; People v Rice, 172 AD3d 1616, 1617 [3d Dept 2019]). "Proof at trial that varies from the indictment potentially compromises two of the functions of the indictment — notice to the accused and the exclusive power of the [g]rand [j]ury to determine the charges" (People v Grega, 72 NY2d at 496; accord People v Reid, 218 AD3d 1273, 1274 [4th Dept 2023]). It is therefore impermissible "for the theory of prosecution to proceed in a manner at variance with the facts alleged in the indictment" (People v Roberts, 135 AD2d 1026, 1028 [3d Dept 1987], affd sub nom. People v Grega, 72 NY2d 489 [1988]; see People v Vasquez, 161 AD3d 902, 902 [2d Dept 2018]; People v Gunther, 67 AD3d 1477, 1477 [4th Dept 2009]).
The indictment here alleged that defendant committed sexual abuse in the first degree by subjecting the underage victim to sexual contact in November 2017; that he committed coercion in the first degree by inducing the victim to provide explicit photographs of herself by threatening to damage her cell phone in June 2019; and that he committed endangering the welfare of a child by knowingly acting in a manner likely to be injurious to the victim's welfare in June 2019. In view of the purposes served by that indictment, as well as the need for the People to present a case in accordance with what was charged in it, it was clearly of great importance for the jury to be advised of what, precisely, defendant was alleged by the indictment to have done. County Court was free to give the jury that information by reading the indictment to prospective jurors, or in its preliminary instructions "to the jury [regarding] its function, duties, and conduct," so long as it also made clear "that the indictment [is] not evidence and" that the jury should not begin to deliberate "until it had heard all of the evidence" (People v Payton, 31 AD3d 580, 581 [2d Dept 2006], lv denied 7 NY3d 850 [2006]; see CPL 270.15 [1] [b]; 270.40; People v Coleman, 37 AD3d 846, 847 [2d Dept 2007], lv denied 8 NY3d 983 [2007]; People v Diaz, 30 AD3d 436, 437 [2d Dept 2006], lv denied 7 NY3d 812 [2006]; cf. People v Burdash, 92 AD2d 627, 627 [3d Dept 1983]). The People were also entitled to "read the entire indictment" in their opening statement (People v Moore, 71 NY2d 684, 688 [1988]; see People v Davis, 208 AD2d 989, 989 [3d Dept 1994], lv denied 84 NY2d 1030 [1995]; People v Reilly, 49 App Div 218, 221 [1st Dept 1900], affd 164 NY 600 [1900]), which would have undoubtedly helped in giving an opening that, as required, provided "sufficient factual details so that the jury could 'intelligently understand the nature of the case they ha[d] been chosen [*5]to decide' " (People v Frazier, 291 AD2d 211, 212 [1st Dept 2002], lv denied 98 NY2d 675 [2002], quoting People v Kurtz, 51 NY2d 380, 384 [1980], cert denied 451 US 911 [1981]; see People v Baltes, 75 AD3d 656, 660 [3d Dept 2010], lv denied 15 NY3d 918 [2010]).
In this case, neither County Court nor the People read the indictment to the jury at the commencement of trial. Defense counsel, without protest from the People, attempted to do so in his opening statement and was stopped by County Court. In the ensuing colloquy outside of the presence of the jury, defense counsel made clear that he sought to read the indictment because "[t]he jury . . . really have no idea right now what it is the People are claiming" that defendant did and counsel wanted to stress that the People would "be required to prove the facts alleged in the indictment" beyond a reasonable doubt in order to secure a conviction. Defense counsel pointed, in particular, to the allegations in the indictment that defendant sexually assaulted the victim in November 2017 and that defendant induced the victim to provide him with explicit photographs by threatening to damage her cell phone in June 2019. County Court acknowledged that the People were bound by their claims in the indictment. The court nevertheless refused to allow defense counsel to read the indictment because, in its view, whether the People's evidence went beyond the scope of the indictment and how to instruct the jury regarding the counts therein were issues of law within the court's "exclusive province." In my opinion, this was error because, although it is true that an indictment does not constitute evidence of anything, it is the basic charging instrument that brings a defendant into the courtroom and defines the parameters of the charges handed down by the grand jury. There was no danger of the jury "taking on the role as [j]udges of the law as well as [j]udges of the fact" if they were told precisely what the indictment had charged defendant with doing, as "the law presumes that the jury will follow the court's instructions that the indictment is not evidence and is only an accusatory instrument" (People v Moore, 71 NY2d at 688).
Defense counsel strenuously objected to County Court's ruling, stating that his "only argument is what [defendant] is charged with" and that, without the indictment detailing what those charges were, "this jury can . . . do whatever they want" and would have "no idea . . . what" defendant had specifically been charged with. He then presented an opening argument in which he stated, in general terms, that the proof would show that the victim's credibility was open to question and that her account of events had changed over time, as well as that the People would not be able to show that defendant had threatened to destroy her phone or molest her.
Defense counsel again sought to read the indictment during his closing statement and, when County Court again refused to allow him to do so, he moved [*6]for a mistrial upon the ground that it violated defendant's due process rights to have the jury decide his fate without knowing what defendant had actually been charged with doing. County Court, in response, reiterated that no reference could be made to the indictment during summation. Defense counsel then gave a summation in which he conceded that defendant had engaged in "reprehensible" behavior and was guilty of endangering the welfare of a child, but argued that the People had not proven that defendant molested the victim in November 2017 or obtained photographs by threatening to destroy her cell phone in June 2019. It is notable that, because defense counsel could not read the allegations in the indictment, he was forced to support that argument by reference to County Court's far vaguer instruction to the jury that the coercion count required "that defendant compelled and induced [the victim] to engage in conduct which she had a legal right to abstain from doing."
It is apparent from the foregoing that defendant's trial strategy hinged on showing that the People had not proven the factual allegations in the indictment, and that County Court stymied that strategy by repeatedly refusing to allow defense counsel to read the indictment to the jury. County Court's refusal to allow defense counsel to read the indictment to the jury in his opening statement violated defendant's statutory right to "present[ ] his view of the case" in an opening statement that highlighted what he believed would be weaknesses in the People's proof (People v Rodriguez, 211 AD2d 443, 444 [1st Dept 1995]; see CPL 260.30 [4]). Defendant further had a constitutional and statutory right to defense counsel delivering a summation that articulated his arguments for acquittal and, while County Court undoubtedly has "great latitude in controlling the duration and limiting the scope of summations," there is also no doubt that "the right of defense counsel to make an effective closing argument is impaired when counsel is unjustifiably limited or repeatedly interrupted during summation" (People v Brown, 136 AD2d 1, 16 [2d Dept 1988], lv denied 72 NY2d 857 [1988], cert denied 488 US 897 [1988]; see CPL 260.30 [8]; People v Mairena, 34 NY3d 473, 481-482 [2019]; People v Ashwal, 39 NY2d 105, 109 [1976]; People v Luis, 189 AD2d 657, 660 [1st Dept 1993]; People v Reina, 94 AD2d 727, 728 [2d Dept 1983]; People v Marcelin, 23 AD2d 368, 369-370 [1st Dept 1965]). County Court here "unjustifiably limited" and "substantially impaired" that right by preventing defense counsel from reading the indictment in support of his primary argument that defendant had not committed the conduct as alleged in the indictment (People v Reina, 94 AD2d at 728; see Herring v New York, 422 US 853, 858 [1975]; People v Aponte, 204 AD3d 1031, 1034 [2d Dept 2022]; People v Middleton, 212 AD2d 809, 811 [2d Dept 1995]).
Finally, although defense counsel sought in large part to read the indictment in order to attack the [*7]coercion in the first degree count, I cannot say that the error in refusing to allow him to do so is now academic due to the dismissal of that count. Without belaboring the point, it is unknowable how the jury would have viewed the remainder of the People's case had defendant been allowed to pursue his strategy of urging the jury that the charges in the indictment were based upon specific factual allegations against him and argue that, in significant respects, the People had not proven them. Thus, in my view, the matter should be remitted for a new trial on the remaining counts against defendant.
ORDERED that the judgment is modified, on the law, by reversing defendant's conviction of coercion in the first degree under count 2 of the indictment; said count dismissed and the sentence imposed thereon vacated; and, as so modified, affirmed.

Footnotes

Footnote 1: Courts have long observed that, when coercion is predicated on a threat of physical injury or property damage, "it is an anomaly of our statutes that the language used to define the felony of coercion in the first degree is virtually identical to that employed to describe the misdemeanor of coercion in the [third] degree" (People v Discala, 45 NY2d 38, 41 [1978] [internal citation omitted]; see People v Eboli, 34 NY2d 281, 285 [1974]; see also People v Finkelstein, 28 NY3d 345, 348 [2016]). As identified by the Court of Appeals, the distinction between the two crimes hinges upon whether the threat involved is of a "heinous quality" (People v Discala, 45 NY2d at 41).